NUMBER 13-99-031-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


JOHN PAUL GARZA
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

__________________________________________________________________


On appeal from the 138th District Court


of Cameron County, Texas.


____________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and Cantu


Opinion by Justice Antonio G. Cantu(1)



 Appellant John Paul Garza was convicted by a jury of the offense of
murder by committing an act clearly dangerous to human life. Tex. Pen. Code
Ann. §19.02 (b)(2) (Vernon 1994 ).(2) Punishment was assessed at twenty-three years confinement in the Texas Department of Criminal Justice,
Institutional Division. In addition, a five thousand dollar fine was also
assessed. We affirm. 

 Appellant presents two assigned issues for appellate review, both
addressing alleged trial court error during the punishment phase of the trial.(3) 
The two issues question whether the trial court erred in: (1) failing to define
"reasonable doubt" for the jury in its charge at the punishment phase, and
(2) admitting evidence of an extraneous offense in violation of article 37.07,
section 3(g) of the Texas Code of Criminal Procedure. See, Tex. Code Crim.
Proc. Ann. art. 37.07 § 3(g) (Vernon Supp. 2000).

 At the charge conference, following a one-day punishment phase trial,
appellant's trial attorney objected to the proposed charge because it failed to
contain a definition of reasonable doubt immediately following the court's
limiting instruction on extraneous offenses and bad acts.(4) Appellant's trial
attorney then read his requested definition into the record, which in all
respects tracked the definition of reasonable doubt previously included in the
court's charge at the guilt/innocence phase. The trial court, without
comment, declined to include the requested definition in its charge.



 FAILURE OF THE COURT'S CHARGE

 TO DEFINE "REASONABLE DOUBT"

 AT THE PUNISHMENT PHASE

 

 In support of his argument on appeal, appellant relies on the language
in section 3(a) of article 37.07, Texas Code of Criminal Procedure, which
requires that extraneous offenses introduced at the punishment phase of a
trial be proven beyond a reasonable doubt, and on the wording in section 3(b)
of the same article which provides:

 After the introduction such evidence has been
concluded . . . the court shall give such additional
written instructions as may be necessary and the order
of procedure and the rules governing the conduct, of
the trial shall be the same as are applicable on the
issue of guilt or innocence. 


Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon 1981) (emphasis added).


 Appellant argues that the holding in Reyes v. State, 938 S.W.2d 718,
721 (Tex. Crim. App. 1996), necessarily implies that section 3(b) of article
37.07 mandatorily requires that "reasonable doubt" be defined in the charge
at the punishment phase. Primary reliance is placed on Fields v. State, 966
S.W.2d 736, 741-42 ( Tex. App.--San Antonio 1998), rev'd, 1 S.W.3d 687
(Tex. Crim. App. 1999), since reversed by the court of criminal appeals.

 Prior to its ruling in Fields, the court of criminal appeals had thoroughly
examined the link between extraneous offenses and the use of instructions
during the guilt/innocence phase of a trial in Harrell v. State, 884 S.W.2d 154,
159-60 (Tex. Crim. App. 1994), wherein it held the standard of admissibility
for extraneous offense evidence to be beyond a reasonable doubt. 
Subsequently, in George v. State, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994),
the court went one step further, holding that if a defendant, during the
guilt/innocence phase, asks for an instruction to the jury on the standard of
proof required for admitting extraneous offenses, the defendant is entitled to
that instruction. Although the court determined that instructions on the use
of extraneous offenses given during the guilt/innocence phases were vital to
a fair administration of justice, it declined to comment on the applicability of
instructions on extraneous offenses in the punishment phases of trial.

 Then, in Mitchell v. State, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996),
the court, addressing the punishment phase for the first time, declared that
the use of extraneous offenses should be analogous to that of the
guilt/innocence phase of a trial regarding the burden of proof. It there
differentiated between the use of extraneous offenses during the
guilt/innocence phases of a trial and the punishment phases, but concluded,
that in either event, where evidence of extraneous offenses is offered, the law
requires that it be proved beyond a reasonable doubt that the defendant
committed the said extraneous offenses, or is at least criminally responsible
for their commission. Subsequently, a number of cases began to appear,
wherein the necessity for an unrequested definition of "reasonable doubt" at
the punishment phase was questioned with various approaches taken and
results achieved. See e.g., Gholson v. State, 5 S.W.3d 266, 272 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd) (no egregious harm shown); Torres v.
State, 4 S.W.3d 832, 837-38 (Tex. App.--Texarkana 1999, pet. ref'd) (error,
if any, waived, no egregious harm shown); White v. State, 999 S.W.2d 895
(Tex. App.--Amarillo 1999, pet. ref'd) (failure to request definition results in
waiver); Cucancic v. State, 997 S.W.2d 396 (Tex. App.--Beaumont 1999, pet.
ref'd) (no egregious harm shown); Powers v. State, 985 S.W.2d 596 (Tex.
App.--Texarkana, 1999, pet. ref'd, pet. dism'd) (no egregious harm shown); 
Cormier v. State, 955 S.W.2d 161 (Tex. App.--Austin 1997, no pet.) (no
egregious harm found); see also, Martinez v. State, 4 S.W.3d 758, 759 (Tex.
Crim. App. 1999) (holding that definition of "reasonable doubt" at the
punishment phase is not required, absent a request, and that a failure to
object or request definition results in waiver under the holding in Fields, 1
S.W.3d at 688). 

 A few cases have also addressed the failure to grant a "reasonable
doubt" definition when an objection is made and a definition is properly and
timely requested. See, e.g., Matz v. State, 989 S.W.2d 419, 426 (Tex. App.--Fort Worth 1999), rev'd on other grounds, 14 S.W.3d 746 (Tex. Crim. App.
2000) (error not harmful); Dickson v. State, 986 S.W.2d 799, 805 (Tex. App.--Waco, 1999, no pet.) (no error shown because definition previously
submitted in court's charge on guilt/innocence; Splawn v. State, 949 S.W.2d
867, 874-75 (Tex. App.--Dallas 1997, no pet.) (error not harmful). 

 Because appellant timely objected and requested a correct definition,
his contention is properly before us for review. Upon request, appellant was
entitled to a definition of "reasonable doubt" in the court's charge on
punishment and the trial court's failure to grant the request constituted error. 
Appellant suggests that a harm analysis should be conducted under Rule
44.2(a) of the Texas Rules of Appellate Procedure(5) because the error is said
to be of constitutional dimension. The contention is premised upon erroneous
reliance on the San Antonio Court of Appeals' opinion in Fields, 966 S.W.2d
at 741-42, since reversed, and a misguided application of the holding in
Reyes, 938 S.W.2d at 721. It is now clear that the general harmless error
analysis set forth in Rule 44.2(a) is not implicated in review of non-fundamental jury charge error. 

 Recently, the court of criminal appeals, in Huizar v. State, 12 S.W.3d
479 (Tex. Crim. App. 2000), held that failure to instruct the jury at
punishment on the burden of proof applicable to extraneous offenses and bad
acts constituted error deriving from statutory violations of articles 36.14 and
37.07 and was purely "charge error under article 36.19." Id. at 484-85; see
also, Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000). Almanza
v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g), sets forth the
appropriate harm analysis for charge error under article 36.19. Huizar, 12
S.W.3d at 484-85.

 In Fields, the court of criminal appeals had earlier made clear that:


 The definition of reasonable doubt set out in Geesa applies
specifically to the guilt/innocence phase of a trial; although 'the
rules are not of constitutional dimension per se . . . [they] serve
to implement the constitutional requirement that a criminal
conviction cannot stand 'except upon proof beyond a
reasonable doubt.' Geesa, 820 S. W. 2d at 163 (citing In re
Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L. Ed.2d 368
(1970)). The reasonable-doubt standard of art. 37.07 is neither
constitutionally required nor based on a constitutional
mandate. At the punishment phase, the defendant has already
been found guilty beyond a reasonable doubt of each element
of the offense charged. For purposes of assessing
punishment, the prosecution may offer evidence of any
extraneous crime or bad act that is shown, beyond a
reasonable doubt, either to have been (1) an act committed by
the defendant or (2) an act for which he could be held
criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07,
§ 3 (a). Prior crimes or bad acts are introduced to provide
additional information which the jury may use to determine
what sentence the defendant should receive. The statute
requires that such evidence may not be considered in
assessing punishment until the fact-finder is satisfied beyond
a reasonable doubt that these prior acts are attributable to the
defendant. Once this requirement is met, the fact-finder may
use the evidence however it chooses in assessing punishment.
Thus, this evidence serves a purpose very different from
evidence presented at the guilt-innocence phase. Neither
Geesa nor art. 37.07 can be read to require that a reasonable-doubt instruction be given at the punishment phase, absent a
request.


Fields, 1 S.W.2d at 688 (footnotes omitted) (emphasis in original).


 Because we hold that the trial court erred in denying the appellant's
timely request for definition of reasonable doubt, we must determine if the
error harmed the appellant.

 The standard for reviewing charge error is found in article 36.19 of the
Texas Code of Criminal Procedure, not in rule 44.2(a) of the Texas Rules of
Appellate Procedure. Article 36.19 provides, in part, that whenever it appears
from the record that there is error in the charge, the judgment shall not be
reversed unless the error was calculated to injure the rights of the defendant
or unless it appears the defendant has not had a fair and impartial trial. See
Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); Almanza, 686
S.W.2d at 171; Abdnor v. State, 871 S.W.2d 726, 731-32 (Tex. Crim. App.
1994); Ovalle, 13 S.W.2d at 786; Avery v. State, 941 S.W.2d 221, 223 (Tex.
App.--Corpus Christi 1996, no pet.). Appellant must show that the harm
suffered from the error was actual and not just theoretical.(6) Arline, 721
S.W.2d at 351. Any harm, regardless of degree, that results from preserved
charging error is sufficient to require reversal. Id. We, therefore, must
assess the actual degree of harm in light of the entire jury charge, the state
of the evidence, including contested issues and weight of probative evidence,
the argument of counsel, and any other relevant information revealed by the
record of the trial as a whole. Id. at 351-52; Hutch v. State, 922 S.W.2d 166,
171 (Tex. Crim. App. 1996); Ovalle, 13 S.W.2d at 786. 

 Recently, the court of criminal appeals, in Ovalle, revisited the issue of
burden of proof in a harmless error analysis. The court stated:

 We do not resolve the issue by asking whether the
appellant met a burden of proof to persuade us that he
suffered some actual harm, as the dissent would have
it. No party should have a burden to prove harm from
an error, and there ordinarily is no way to prove
"actual" harm. Burdens and requirements of proving
actual facts are appropriate in the law of evidence, but
they have little meaning for the harmless-error
decision. 


 In evaluating what effect, if any, an error
had on the jury's verdict, the appellate 
court may look only to the record before it. 
The function of a party carrying the burden
is simply to suggest, in light of that record,
how prejudice may or may not have 
occurred. At that point, the court makes its
own assessment as to what degree of
likelihood exists as to that prejudicial or
non-prejudicial impact and then applies to
that assessment the likelihood-standard of
the particular jurisdiction. 


Ovalle, 13 S.W.3d at 787 (emphasis supplied) (citations omitted).

 

 Appellant suggests that the necessary harm may be gleaned from: (1)
the fact that he denied committing several of the extraneous acts shown by
the evidence;(7) (2) from the argument of the prosecutor requesting that the
appellant be punished more severely because of various extraneous acts; (3)
because "the jury charge did not provide a complete set of instructions
necessary for the jury to understand whether or not they should consider the
extraneous acts;" (4) "because the incomplete jury charge only obfuscated
the state's burden of proof regarding the acts;" and (5) "because the
punishment assessed was substantially more than the minimum authorized
by statute." 

 We commence a review under Almanza by addressing each of
appellant's contentions with a few preliminary observations. From reviewing
the court's charge at the guilt/innocence phase, we can conclude that
appellant did not testify. Since a limiting instruction on extraneous offenses
is not contained in the charge, we can, likewise, surmise that either no such
acts were admitted before the jury at that phase(8) or that a request for such
an instruction was not made. Moreover, the record reflects that the case was
tried once before and resulted in a hung jury; that appellant was afforded
continuous open file policy; that he was given notice that the State
anticipated offering evidence of some fourteen extraneous offenses, including
an undisclosed number of assaults; and that defense counsel had personally
reviewed every potential witness's statement. From the record, it appears
that the jury was justified in finding that appellant killed a longtime friend by
chasing him and repeatedly shooting him in the back as the victim sought to
retreat following some disagreement. 

 Eight state witnesses testified regarding two burglaries of habitation, two
false imprisonment convictions, one driving while intoxicated arrest, and two
aggravated assaults attributable to appellant. Appellant was described as
having a reputation for violence and aggressiveness by a state witness and
as "the bully type" by one of his own witnesses.

Appellant's denial of several of the extraneous acts



 Appellant took the stand and testified at the punishment phase and denied
the commission of one of the burglaries attributed to him and further denied
displaying a gun during one of the aggravated assaults. He admitted to the
two convictions for false imprisonment but sought to explain them away. He
also admitted to the D.W.I. arrest. There is no contention by appellant that
the evidence is insufficient to prove beyond a reasonable doubt that he
committed the various extraneous offenses and bad acts; nor does he in any
way challenge the sufficiency of the evidence to prove the underlying
conviction of murder.(9) Neither has he pointed to anything in the evidence
that would indicate that if he had received the reasonable doubt definition, 
the jury would have disregarded the evidence of extraneous offenses and bad
acts. Cf. Tow v. State, 953 S.W.2d 546, 548, n.1 (Tex. App.--Fort Worth
1997, no pet.).

 Prosecutor's request that appellant be punished

more severely because of various extraneous offenses and bad acts


 At the punishment phase, the prosecutor reminded the jury of the
circumstances surrounding the instant killing. She also pointed out, in her
final summations, that appellant, although barely nineteen years of age, had
already accumulated quite a criminal history, including a burglary of a
habitation committed while out on bond for the murder of which he had just
been convicted. Although the applicable penalty range extends from a term
of five years up to ninety nine years, and including life, the prosecutor
requested the jury to begin their consideration at fifty years and then give
appellant a five to ten year reduction for every good thing they had heard
about appellant. The prosecutor even invited the jury to consider community
supervision if they believed the appellant merited that penalty range. Nothing
in the argument of the prosecutor unduly emphasized the desire to have a
more severe punishment assessed solely because of the evidence of
extraneous offenses or bad acts. Nothing would have prevented the
prosecutor from doing so had she chosen to do so. Appellant's trial attorney,
on the other hand, devoted much of his argument to discrediting the
evidence on extraneous offenses, repeatedly requesting the jury to find that
the evidence did not support a finding beyond a reasonable doubt that the
appellant had committed the acts. A great deal of counsel's argument also
sought to justify and excuse appellant's conduct of the very murder issue the
jury had already decided contrary to appellant. Cf. Poole v. State, 974 S.W.2d
892, 901 (Tex. App.--Austin 1998, pet. ref'd). We find nothing in the
prosecutor's argument that falls outside the perimeters of acceptable
prosecutorial argument.

The jury charge did not provide a complete set of instructions necessary

for 

the jury to understand whether or not they should consider the extraneous

acts


 It is unclear what appellant is complaining about. The charge of the
court clearly instructed the jury on how they were to treat the extraneous
offenses and bad acts admitted for their consideration. Curiously, one of
appellant's complaints in his motion for new trial echoes the same complaint
now advanced on appeal, and ironically, the complaint regarding failure to
define reasonable doubt does not merit a mention in the motion for new trial.

The incomplete jury charge only obfuscated 


the State's burden of proof regarding the acts



 Presumably, appellant is referring to the missing definition of reasonable
doubt that he requested to be included in the charge on punishment. 
Although the definition should have been included, the fact of its
noninclusion alone cannot support a finding of harm. The charge at the
guilt/innocence phase included a correctly stated definition. During final
arguments, appellant's trial attorney continuously reminded the jury of the
court's charge and admonished the jurors that unless they found that the
extraneous offenses and bad acts were proven beyond a reasonable doubt,
those offenses and bad acts could not be considered. Although two days
expired between the jury instructions at the guilt/innocence phase and the
punishment phases,(10) it is unlikely that the jury had forgotten the earlier
definition of "reasonable doubt." Nor is there any evidence that the jury did
not apply the previous definition or that it resorted to some other definition
at the punishment deliberations. Cf. Shanks v. State, 13 S.W.3d 83, 88 (Tex.
App.--Texarkana 2000, no pet. h.); Cucancic, 997 S.W.2d at 398; Cormier,
955 S.W.2d at 163-64; see also Fields, 1 S.W.3d at 686, n. 4.

The punishment assessed was substantially more

than the minimum authorized by statute


 The punishment assessed at twenty-three years and a fine of five
thousand dollars can not be said to be substantially more than the minimum
authorized by statute. The punishment assessed falls well within the lower
one fourth of the penalty range and far below the penalty sought by the
State. Given the heinous nature of the crime and the penalty of only twenty-three years, we believe that the extraneous offenses and the failure to provide
the requested definition had a minimal effect on the jury's assessment of
punishment. 

 We overrule appellant's first issue. 

ERROR IN ADMITTING EVIDENCE OF AN EXTRANEOUS OFFENSE IN 


VIOLATION OF ARTICLE 37,07, SECTION 3(g), TEXAS CODE OF CRIMINAL

PROCEDURE


 On June 17, 1998, appellant made a pretrial request under article
37.07 section 3(g) of the Texas Code of Criminal Procedure that the State
provide reasonable notice of its intent to introduce, during the punishment
phase of the trial, evidence of extraneous crimes or bad acts. (11) On August
17, 1998, the State responded with a list of four offenses. Thereafter, the
State supplemented its response on August 18, 20, 21 and 28, as well as
September 23 and October 22. The State's final response disclosed an intent
to elicit evidence of fourteen extraneous offenses. The last of the fourteen
offenses disclosed was:

 OFFENSE : Burglary of a habitation

 DATE OF OFFENSE: On or about 08/30/98

 COUNTY OF JURISDICTION : Cameron County, Texas

 VICTIM : Jesus Garcia (emphasis ours)

 

 Trial commenced on August 24, 1998 and ended in a mistrial on
August 31, 1998, after the jury announced its inability to reach a verdict. On
October 26, the case went to trial for the second time and on October 31, the
jury returned its guilty verdict. The punishment phase began and ended
November 2, 1998.

 The State's evidence at the punishment phase established that on
August 30, 1998, appellant was implicated in a burglary of a habitation
against one Jesus Garza in Cameron County, Texas. The State's first witness
was Tammy Garza, wife of the incorrectly identified victim. She testified to
the underlying facts surrounding the burglary of her home on the date in
question and identified the items taken and subsequently recovered. She
further identified Jesus Garza as her husband and added that appellant was
her husband's cousin. Appellant's trial attorney neither objected to her
testimony, cross-examined the witness, nor sought to have her testimony
stricken.

 Instead, appellant's trial attorney approached the bench and objected to
the introduction of any further evidence surrounding the incident, on the
basis that the State had failed to comply with the provisions of article 37.07
section 3(g), in that the State had provided the victim's wrong surname. 
Efforts to prohibit further evidence on the matter were rebuffed by the court
after a short hearing at the bench.

 Thereafter a number of State's witnesses testified, providing additional
details surrounding the burglary and circumstantially tying appellant to the
offense. 

 The record discloses that the burglary was committed by appellant at
the very time his first trial was in progress, on the day immediately preceding
the granting of a mistrial, and that he was subsequently arrested for the
offense prior to commencement of the second trial, less than two months
later. Moreover, appellant was fully aware, at the time of the second trial, of
the victim's true name, having already been served with a copy of the
indictment addressing the August 30, 1998 burglary. 

 [ Prosecutor] Q. And you were out on bond for a murder
when 

 those people got burglarized; is that
correct?

 

 [ Appellant] A. Ah, yes, sir. 
 

 [ Prosecutor] Q. Yeah.


 [ Appellant ] A. I never knew that they got burglarized; 

 I didn't know that they were my cousins. 

 Until they, you know, until they indicted
me.


 It is inconceivable that appellant would be unfamiliar with the victim's
true name and the facts surrounding this event at the time of trial. By his
own admission, appellant was well aware of the victim's identity after he
was served with a copy of the indictment. Having been served with a copy
of the indictment between trials, he is not in a position to contend that he did
not receive adequate notice of all the required statutory disclosures. The
State is not required to give its notice in any particular manner under article
37.07, section 3(g). See McQueen v. State, 984 S.W.2d 712, 716 (Tex. App.--Texarkana 1998, no pet.); Neuman v. State, 951 S.W.2d 538, 540 (Tex.
App.--Austin 1997, no pet.).

 Nothing in the record indicates that appellant or his attorney was
surprised by the testimony adduced regarding this extraneous offense. Nor
does appellant actually claim surprise on appeal.(12) The sole complaint is
premised on a bare assertion of noncompliance with the statute due to a
variance in surname. We do not, however, view the complaint as one of
noncompliance but rather as one of adequacy of compliance, as appellant
somewhat admits, "The State failed to comply with the statute, and by so
doing, the State unfairly accused appellant of extraneous acts, without giving
appellant adequate notice of the allegations that he would be required to
defend against during trial." (emphasis supplied). 

 The purpose of article 37.07, section 3(g) is to avoid unfair surprise and
trial by ambush. Roman v. State, 986 S.W.2d 64, 67 (Tex. App.--Austin
1999, pet. ref'd); Nance v. State, 946 S.W.2d 490, 493 (Tex. App.--Fort
Worth 1997, pet. ref'd); but see, Hayden v. State, 13 S.W.3d 69, 77 (Tex.
App.--Texarkana 2000, no pet.), wherein the court, noting that the State had
failed to give even general notice(13) of its intent stated, "the better approach
is to focus, not only on eliminating the surprise to the defendant, but also on
whether the State has informed the accused of its intent to introduce theses
offenses at trial."

 In Roman, 986 S.W.2d at 67, the court was called upon to consider the
adequacy of notice given under article 37.07, section 3(g). Looking to the
reasoning in Buchanan v. State, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995),
wherein the court addressed Rule 404(b) of the Texas Rules of Criminal
Evidence,(14) the Austin Court of Appeals agreed that, as applicable to article
37.07, defense access to offense reports and other information contained in
the State's file does not, in itself, constitute notice of the State's intent to
introduce evidence of any particular fact contained in the file. Roman, 986
S.W.2d at 66 (emphasis supplied). The court noted that the State had
expressly notified the defense of its intent to introduce evidence of five
specified categories of extraneous misconduct in the offense report. Id. 

 In Nance, 946 S.W.2d at 492, the State, in its notice to the defendant,
failed to disclose the county where the alleged extraneous offense was
committed. The court noted that the defendant had received the required
notice within an indictment, which was also pending against him and which
contained all of the elements, including venue (notice of county), pertaining
to the same transaction sought to be used as an extraneous offense in the
present trial. In overruling appellant's notice contention, the court refused to
elevate form above substance and held that there was substantial compliance
with the statute. Id. We think there are similarities in the case before us
and agree with the reasoning in Nance, that notice, however given, if
adequate, complies with the statute. See also, Hohn v. State, 951 S.W.2d
535, 537 (Tex. App.--Beaumont 1997, no pet.) (notice given substantially
complied with the statute and did not place appellant in the position of being
unfairly surprised).

 Moreover, even if the notice failed to substantially comply with the
statutory requirements, we find that any error was harmless. 

 Appellant's only claimed harm is "that evidence of the extraneous
burglary almost certainly swayed the jury in its decision to sentence appellant
to 23 years." He points to the prosecutor's argument against the granting of
community supervision: "He could
have
changed
after he
killed Glen
Cook. He
could have
changed. 
But he
didn't. He
went out
and
committed
another
burglary. 
He doesn't
change."

 The prosecutor's opening remarks actually chronicled appellant's
criminal history, which was considerably long for a nineteen-year-old. The
prosecutor pointed out to the jury that appellant had already received the
benefits of community supervision three times and that he was being
supervised at the time of the murder and the extraneous burglary. The
State's opening remarks barely glossed over the extraneous burglary in
reviewing the criminal history. It was appellant's trial attorney who focused
on the extraneous burglary in some detail in his effort to convince the jury to
punish only for the murder. The remarks appellant complains about are
actually responses to argument by appellant's trial attorney, claiming that
appellant should be given one more opportunity to change, through yet one
more community supervision.

 We think appellant's complaints are not focused on the objectives of
the statute. None of appellant's complaints address any claimed prejudice
suffered as a result of the State's failure to comply with the notice
requirements of article 37.07, section 3(g). He does not claim that the lack
of notice prejudiced his ability to meet and defend against the accusations
raised by the extraneous offense in any manner. There is no contention, for
example, that he was deprived of the opportunity to obtain witnesses or
otherwise effectively respond defensively. There is no indication that a
continuance was needed. Nor does he suggest how the evidence and
argument would have been any different had the victim's surname been
properly spelled out. All of the complaints are directed at alleged harm
arising from the substantive testimony rather than from any lack of adequate
notice. Our independent search of the appellate record for some harm arising
from lack of notice reveals none.

 Accordingly, we conclude, beyond a reasonable doubt, that any failure
to comply with article 37.07, section 3(g) did not contribute to the
punishment or otherwise affect appellant's substantial rights. Tex. R. App. P. 
44.2(b). Appellant's second issue is overruled.

 For the reasons stated, the judgment of the trial court is affirmed.



 ANTONIO G. CANTU

 JUSTICE



Do not publish.

Tex. R App. P. 47.3.


Opinion delivered and filed


this the 6th day of July, 2000. 

1. [1] Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. Sec. 74.003(b)
(Vernon 1998).
2. 

[2] The indictment alleged murder under both section 19.02 (b)(1) and section 19.02 (b)(2). The jury acquitted appellant of murder under the
first paragraph and returned its verdict under the second paragraph.
3. 

[3] Appellant does not challenge the jury finding of guilt but seeks a reversal and remand for punishment only.
4. 

[4] The trial court gave the following instruction:

 " You are instructed that certain evidence was admitted in evidence before you in this case regarding the defendant having
committed offenses other than the offense alleged against him in the indictment. Such evidence cannot be considered by you against
the defendant for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such offenses, if
any were committed, and even then you may only consider them in determining punishment in this case and not on setting
punishment."
5. [5] Texas Rule of Appellate Procedure 44.2(a) provides in relevant part:

 (a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to
harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines
beyond a reasonable doubt that the error did not contribute to the conviction or punishment. See Tex. R. App. P. 44.2(a).
6. [6] In Abdnor v. State., 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994), the court stated that the burden of proof was upon the
defendant to persuade the reviewing court that he suffered some actual harm as a consequence of the charging error. 
Whether this statement still has vitality in view of the recent pronouncements in Ovalle remains to be seen.
7. [7] The court reporter's record of the guilt/innocence phase has not been made a part of the record on appeal. Only the record
of the punishment phase is before us, as well as several records of pretrial and post-trial hearings. Nevertheless, we are able
to ascertain the nature and gravity of the testimony developed before the jury on the guilt/innocence phase from testimony
and remarks made during the punishment phase and during final arguments.
8. 

[8] The use of evidence of extraneous offenses during the guilt/innocence phase is used to prove "motive, opportunity intent,
preparation, plan , knowledge, identity, or absence of mistake or accident." Mitchell v. State, 931 S.W. 2d 950, 954 (Tex.
Crim. App. 1996).
9. [9] There is some indication that a confession was obtained and admitted before the jury at the guilt/innocence phase.
10. [10] The jury's verdict on the guilt/innocence phase was returned on a Saturday and the jury reconvened on Monday morning
for the punishment phase.
11. [11] Art. 37.07 Sec.3(g) provides :

 

 On timely request of the defendant, notice of intent to introduce evidence under this
article shall be given in the same manner required by Rule 404(b), Texas Rules of
Criminal Evidence. If the attorney representing the state intends to introduce an
extraneous crime or bad act that has not resulted in a final conviction in a court of record
or a probated or suspended sentence, notice of that intent is reasonable only if the notice
includes the date on which and the county in which the alleged crime or bad act occurred
and the name of the alleged victim of the crime or bad act. The requirement under this
subsection that the attorney representing the state give notice applies only if the
defendant makes a timely request to the attorney representing the state for the notice.


Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g) (Vernon Supp. 2000).
12. [12] At an October 24, 1998 pretrial hearing, two days before commencement of trial, appellant's trial attorney acknowledged
to the court that he had received notice of fourteen proposed extraneous offenses and that he had been allowed to review all
of the witnesses' statements in the State's possession. The prosecutor also disclosed the names of subpoenaed witnesses,
which included witnesses who subsequently testified about the August 30, 1998 burglary.
13. 

[13] The court was interpreting the notice requirement of Rule 404(b).
14. [14] The interpretation of Rule 404(b) is also applicable to the Article 37.07 Section 3(g) notice requirement. Dodgen v. State,
924 S.W. 2d 216, 219, (Tex. App.--Eastland 1996, pet. ref'd.)