NO. 07-02-0427-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 7, 2003



______________________________




LLOYD ORVILLE ROBERTSON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 44,773-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1)

OPINION


 In this appeal, appellant Lloyd Orville Robertson challenges his conviction of
aggravated robbery. His punishment was assessed by the trial jury at 40 years
confinement in the Institutional Division of the Department of Criminal Justice and a
$10,000 fine. In pursuing his appeal, he presents three issues for our determination. In
doing so, he argues 1) the trial court erred by failing to limit the definitions of "intentionally"
and "knowingly" in the jury charge to the conduct elements of the offense to which they
apply, 2) the evidence is factually insufficient to support a finding that appellant
intentionally or knowingly threatened and placed Aileen Hollingsworth (the alleged victim) 
in fear of imminent bodily injury and death, and 3) the evidence is factually insufficient to
support a finding that appellant intended to deprive the owner of property. Disagreeing
that reversal is required, we affirm the judgment of the trial court. 

 Although the facts giving rise to the underlying prosecution are, in the main,
undisputed, the nature of appellant's challenges requires us to briefly review the pertinent
evidence. In the early morning of July 21, 2001, Aileen Hollingsworth, the assistant
manager, opened the Toot'n Totum convenience store located at the intersection of Grant
and Amarillo Boulevard in Amarillo. As she did so, she noticed a van backed up to the
door and saw a man, later identified as appellant, get out of the van carrying a three-foot
knife, commonly referred to as a machete, and enter the store. Hollingsworth testified that
when she saw appellant enter the store with the machete, she was frightened. Appellant
told Hollingsworth he was thirsty, and she replied that if he would put the knife down, she
would get him a glass of water. Hollingsworth said that appellant then started "talking in
the air to-I'm thinking its just somebody that wasn't there. I didn't see anybody." She
continued by saying that he started "flinging the knife around, and just scaring me," so she
stayed with her back to an office door that she could go through and lock, if necessary. 
She also averred he "walked around there, where I was standing, and stayed there. And
then he walked over to the door, and then he turned to me, and he said, well, if you're not
going to give me any water, I will." She told him to "[d]o whatever you want." She testified
she said this because appellant still had the three-foot knife in his hand and "I wasn't
moving." Appellant walked over to the Culligan display, got a gallon container of water,
went to the front door, squatted, and began drinking the water. He then went out to the
parking lot. During the time appellant was in the store, Hollingsworth called 911 several
times. Although she had stopped shoplifters several times before, she said, she did not
try to stop appellant because of his knife and her fear of him. She also said that appellant
appeared to be intoxicated.

 Police Officers Brian Campbell and Shane Chadwick testified that when they
arrived, appellant was in the parking lot adjacent to the store building. He had the
machete in his hand initially, waved it around, and told them he was not going to jail again. 
In order to restrain him and get the machete away, the officers were forced to use non-lethal force, including the use of a "bean-bag" shotgun (a shotgun that shoots bean-bag
pellets instead of the more lethal regular pellets).

 Murali Veeramachaneni, an Amarillo psychiatrist, testified about the effects of drug
addiction. He averred that the abuse of controlled substances could lead to psychosis and
bizarre behavior.

 Appellant chose to testify. He said he had been ingesting and shooting
methamphetamine prior to the occurrence in an effort to commit suicide. As a result, he
said, he did not remember how he arrived at the store, and the first thing he remembered
was backing his van up to its door. He was thirsty, he said, and wanted to go into the store
and purchase some water to quench his thirst. Although he was aware that he was
carrying a machete under his arm, he swore he did not intend to place Hollingsworth in
fear of imminent bodily injury. At one point, he said, he had put the machete under his arm
to get his wallet to pay for the water but when he could not find it, he assumed that he had
left the wallet in his pickup. He was aware that he was frightening Hollingsworth, but he
did not intend to do so. He averred he told her he would not harm her. He also swore he
did not intend to steal the water, and that he was in the process of going to his van to get
his wallet when the officers arrived.

 Appellant admitted he had had a drug problem for a number of years and had
committed some violent actions in the past. He also admitted that he was aware that a
machete was capable of causing serious bodily injury or death when he entered the store,
but was adamant that he did not intend to harm the clerk or steal the water. 

 As we noted, in his first issue, appellant argues that the trial court committed
reversible error in its charge in the guilt-innocence phase of the trial by failing to limit its
definitions of "knowing" and "intentional" to the relevant conduct elements of the underlying
offense. Appellant made no trial objection to the court's charge.

 To sustain the conviction for aggravated robbery, the State must have proved
beyond a reasonable doubt that the defendant, in the course of committing theft, and with
the intent to obtain or maintain control of the property, "intentionally or knowingly"
threatened or placed Hollingsworth in fear of imminent bodily injury or death and, in the
course of committing a robbery, used or exhibited a deadly weapon. Tex. Pen. Code Ann.
§§ 29.02 and 29.03 (Vernon 2003). In the indictment, and in relevant part, the State
charged that appellant:

 . . . did then and there, while in the course of committing theft of property,
to-wit: bottled water, and with intent to obtain and maintain control of said
property, intentionally or knowingly threaten and place AILEEN
HOLLINGSWORTH in fear of imminent bodily injury and death, and the
defendant did then and there use and exhibit a deadly weapon, to-wit: a
machete that in the manner of its use or intended use was capable of
causing death or serious bodily injury.

 

In its guilt-innocence charge, the trial court instructed the jury on the meaning of
"intentionally" and "knowingly" and applied those definitions to the facts of the case as
follows:

 A person acts intentionally, or with intent, with respect to the nature
of his conduct, or to a result of his conduct, when it is his conscious objective
or desire to engage in the conduct or cause the result.


 A person acts knowingly, or with knowledge, with respect to the
nature of his conduct, or to the circumstances surrounding his conduct, when
he is aware of the nature of his conduct or that the circumstances exist. A
person acts knowingly, or with knowledge, with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the
result.


* * *



 Now if you find from the evidence beyond a reasonable doubt that on
or about July 21st, 2001, in Potter County, Texas, the defendant, LLOYD
ORVILLE ROBERTSON, did then and there, while in the course of
committing theft of property, to-wit: bottled water, and with intent to obtain
and maintain control of said property, did intentionally or knowingly threaten
or place Aileen Hollingsworth in fear of imminent bodily injury or death, and
the defendant did then and there use or exhibit a deadly weapon, to wit: a
machete, that in the manner of its use or intended use was capable of
causing death or serious bodily injury, then you will find the defendant guilty
of aggravated robbery as charged.


 In supporting his proposition that the trial court erred, appellant emphasizes that the
thrust of his defense was that he did not intend to place anyone in fear of imminent bodily
injury or death and did not intend to commit theft. He points out that the evidence
produced by both himself and the State was essentially the same except in regard to his
mental state. He refers to his testimony that he intended to purchase something to drink,
but discovered he did not have his wallet and was prevented from obtaining his wallet by
the actions of the police. Appellant also refers to his testimony that he had the machete
because of his fear of imaginary people. He references Hollingsworth's testimony that he
was talking to people who were not there and waving the machete as he did so. All of this,
he concludes, shows the primary contested issue at trial was his mental state and was the
crux of his defense.

 In arguing the court's charge was not sufficient, appellant relies upon the teaching
of cases such as Patrick v. State, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995), cert.
denied, 517 U.S. 1106, 116 S.Ct.1323, 134 L.Ed.2d 475 (1996); Fields v. State, 966
S.W.2d 736, 739 (Tex. App.-San Antonio 1998), remanded on other grounds, 1 S.W.3d
687 (Tex. Crim. App. 1999); and Ash v. State, 930 S.W.2d 192, 194 (Tex. App.-Dallas
1996, no pet.), that the "intentional" and "knowing" references in a court's charge be
confined to the specific conduct element required to prove the alleged offense. He argues
that the trial court's application paragraph fails to describe the manner and means of
committing the robbery and "fails to limit the culpable mental states to the result of
[a]ppellant's conduct in any manner" and, thus, was in error. He reasons the trial court
should have limited the bodily injury definition as follows:

 The following definition applies to the mental state in placing Aileen
Hollingsworth in fear of imminent bodily injury or death: A person acts
'intentionally' or with intent, with respect to a result of his conduct when it is
his conscious objective or desire to cause the result. A person acts
knowingly, or with knowledge with respect to a result of his conduct when he
is aware that his conduct is reasonably certain to cause the result.

 

 Appellant also argues the court should have limited the appropriation of property
definition as follows:

 The following definition applies to the mental state in appropriation of
property: A person acts 'intentionally,' or with intent, with respect to the
nature of his conduct when it is his conscious objective or desire to engage
in the conduct. A person acts knowingly, or with knowledge with respect to
the nature of his conduct when he is aware of the nature of his conduct. 


He further posits that the court should have limited the definition referring to "in the course
of committing theft" as follows:

 The following definition applies to the mental state in the course of
committing theft: A person acts 'intentionally,' or with intent, with respect to
the circumstances surrounding his conduct when he is aware that the
circumstances exist. A person acts knowingly, or with knowledge with
respect to the circumstances surrounding his conduct when he is aware the
circumstances exist. 


 Recognizing that no trial objection to the court's charge was made on his behalf,
appellant now contends that the error was so egregious that reversal is required. Although
the State does not concede there was reversible error in the charge, it does concede
Texas courts require that in the judge's charge to the jury on guilt or innocence, "the
'intentional' and 'knowing' requirements be confined to the specific conduct element
required to prove the alleged offense." 

 For unpreserved charge error to be reversible, the error must be "egregious," that
is, it must have so harmed the defendant that he was deprived of his right to a fair and
impartial trial. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The
reviewing court must assay the harm in light of the entire record, including the entire jury
charge, the state of the evidence, including the contested issues and weight of probative
evidence, and any other relevant information revealed by the record of the trial as a whole. 
Id.; see also Hutch v. State, 922 S.W.2d 166, 170-74 (Tex. Crim. App. 1996). The same
rule applies even in a case such as this one in which the principal issue was the intent of
the defendant. It is also established that intent can be inferred from the acts, words, and
conduct of the accused. Beltran v. State, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980).

 In this case, the charge included the full definitions of "intentionally" and
"knowingly." The general instructions in the charge were related to the conduct required
for conviction by the reference in the application paragraph that a conviction must be
predicated upon the jury finding beyond a reasonable doubt that appellant intentionally or
knowingly did "threaten or place Hollingsworth in fear of imminent bodily injury." Thus, the
term intentionally or knowingly directly modifies and refers to the phrase "threaten or place
in fear of imminent bodily injury." When the terms "intentionally" and "knowingly" are
viewed in their factual context, together with the application paragraph, the jury was
directed to the appropriate portion of the definitions and were not misled as to the degree
of proof required.

 Additionally, in the application paragraph, the jury was required to find as a
threshold matter that appellant intended to unlawfully appropriate property before it could
convict him of aggravated assault. Thus, if the jury found that appellant lacked the intent
to commit theft, it was required to acquit appellant even if it believed that he intentionally
or knowingly placed Hollingsworth in fear of imminent bodily injury. Suffice it to say,
appellant did not suffer egregious injury by the submission of the charge as written. 
Appellant's first issue is overruled.

 As we noted above, in his second issue, appellant challenges the factual sufficiency
of the evidence to support a finding that appellant intentionally or knowingly threatened
and placed Hollingsworth in fear of imminent bodily injury or death. 

 The standards by which an appellate court judges the factual sufficiency of the
evidence are by now well established. Succinctly stated, the reviewing court views all the
evidence without the prism of "in the light most favorable to the prosecution." The jury's
verdict may only be set aside if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. In performing its review of a jury verdict, an appellate
court must defer to the factfinder's determination concerning what weight to give
contradictory testimony. Johnson v. State, 23 S.W.3d 1, 7-9 (Tex. Crim. App. 2000);
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 

 When robbery is committed by threats or by placing another in fear, that fear must
be of such a nature as in reason and common experience is likely to induce a person to
part with his or her property against their will. Devine v. State, 786 S.W.2d 268, 270 (Tex.
Crim. App. 1989). In order to commit the offense, the accused must have had the specific
intent to place any person in fear of imminent serious bodily injury. Dues v. State, 634
S.W.2d 304, 305-06 (Tex. Crim. App. 1982). Intent can be inferred from the acts, words,
and conduct of the accused. Id. at 305; Beltran v. State, 593 S.W.2d at 689; Romo v.
State, 593 S.W.2d 690, 693 (Tex. Crim. App. 1980), overruled on other grounds by
Wagner v. State, 687 S.W.2d 303 (Tex. Crim. App. 1984). The accused's intent cannot
be determined merely from what the victim thought at the time of the offense, and it is
immaterial to the offense whether the accused had the capability or the intention to carry
out his threat. Indeed, all that is necessary to complete the offense is that the accused by
his threat sought, as a desired reaction, to place a person in fear of imminent serious
bodily injury. Dues v. State, 634 S.W.2d at 306.

 In contending the evidence is factually insufficient, appellant points to the testimony
of Dr. Veeramachaneni, in response to a hypothetical question, that a person who has
consumed methamphetamines at least three times a day, talks to people who are not
there, and acts paranoid would be delusional and psychotic. Appellant averred he had
been ingesting methamphetamines. Additionally, he also testified that he did not intend
to place Hollingsworth in fear of death or imminent bodily injury and denied that he
threatened her. He also said he was having some paranoid delusions. He admitted that
he was aware that Hollingsworth was frightened and averred that he attempted to calm her
when he told her he would not hurt her.

 However, the evidence also showed that appellant backed his van up to and came
into the store bearing a three-foot machete, that he asked Hollingsworth for water and she
asked him to put the machete down, that she was fearful and would not move but stayed
by the door, that appellant brandished the machete and took water from the store, and he
retained the machete as he left the store. Hollingsworth testified that she was in such fear
that she had pushed the 911 button several times while appellant was in the store,
because of her fear she stayed by a door that was a potential escape route, and she
locked the door as soon as he left, again because she was afraid of him.

 Viewed in the light by which we must view it, we cannot say that the jury's verdict
was so against the overwhelming weight of the evidence as to be manifestly unjust, that
it clearly demonstrated bias, or that it shocks the conscience. Appellant's second issue
is overruled.

 In his third issue, appellant contends the evidence is factually insufficient to support
a finding that appellant intended to deprive the owner of property. In considering this
argument, we note the rule that an intent to deprive must be determined from the words
and acts of the accused and that intent must exist at the time of the taking. See Banks v.
State, 471 S.W.2d 811, 812 (Tex. Crim. App.1971); Roberson v. State, 821 S.W.2d 446,
448 (Tex. App.-Corpus Christi 1991, pet. ref'd); Draper v. State, 539 S.W.2d 61, 68 (Tex.
Crim. App. 1976). The gist of appellant's contention is that the evidence shows his
conduct was consistent with his testimony that he did not intend to steal the bottle of water. 
He reasons the evidence shows that he made no demands of Hollingsworth and she told
him to help himself to the water. He posits that this evidence, when taken together with
his assertion that he went into the store intending to buy something to drink, that he
discovered he did not have his wallet, and he was prevented by the actions of the police
from determining if his wallet was in his vehicle and paying for the water shows that the
evidence, taken as a whole, is not sufficient to sustain the verdict of the jury. 

 We disagree. As we have noted, the evidence shows that appellant walked into the
store, told the clerk he wanted water, took the bottle of water, and without saying anything
to the clerk about his wallet being in the car, walked past the cash register and onto the
parking lot while imbibing the water. The jury would have been justified in concluding that
the remark of the clerk about taking the water was because of her perceived fear of
appellant and the weapon he carried. Reiterated, the intent to maintain or obtain control
of property or the intent to deprive the owner of property may be determined by the
factfinder from the words and acts of the accused. Griffin v. State, 614 S.W.2d 155, 159
(Tex. Crim. App. 1981). Appellant's third issue is overruled.

 In summary, all of appellant's issues are overruled, and the judgment of the trial
court is affirmed.

 John T. Boyd

 Senior Justice

Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).