

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00066-CR

**MARK MCCARTY,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 77th District Court
Limestone County, Texas
Trial Court No. 12894-A**

## MEMORANDUM  OPINION

The jury convicted Mark McCarty of the offense of robbery, found the enhancement paragraphs to be true, and assessed punishment at forty years confinement.  We affirm.

### Background Facts

Brian Verlander was working as a pharmacist at CVS Pharmacy in Mexia, Texas on June 14, 2012.  At approximately 9:30 a.m. a man approached the counsel window of the pharmacy.  Verlander greeted the man, and the man said to give him all of the

"Norco 10[1]."  Verlander first thought the man must be kidding, but he said, "No, I'm not kidding.  Give me all the Norco 10.  Don't be foolish so no one gets hurt."  Verlander believed that the man had a gun in the back of his pants because of the way he held his hand behind his back.  Verlander testified that he was very frightened and worried about what would happen to his family if he was injured or killed.  Verlander got all of the Norco 10 and took it back to the window, and the man told Verlander to put the drugs into a bag.  Verlander had the man come to the register where he would be on the surveillance camera.  He then put the Norco 10 in a bag, and the man left.  There were 2190 pills of Norco 10 taken from CVS pharmacy.

Jessica Shamburger was working as a pharmacy technician on the day of the offense.  She testified that she was helping a customer in the drive-through, and when she turned around Verlander was standing there looking confused and "dumb-founded."  She asked him what happened, and he responded that "He took all the Norco."  Shamburger said that Verlander was nervous and that his "eyes were big."  Shamburger called 911, and Verlander called the manager of the store.  The police arrived, and they reviewed the surveillance video.  They were able to print out a still photograph from the video.

The police took the photograph to other pharmacies in the area.  Alicia Smith testified that she works at Pharmacy Plus in Mexia and that she was able to identify McCarty from the photograph.  Smith testified that McCarty had been a customer of the pharmacy for a few years.

---

[1] Norco 10 is the brand name for the generic drug hydrocodone.

McCarty's brother, Jon McCarty, testified at trial that that he saw McCarty on the morning of June 14. Jon further testified that McCarty came back to the house later that morning at around 10:30, and McCarty said that he had robbed the Mexia CVS to support his drug habit. McCarty left approximately fifteen minutes later. McCarty called Jon later that afternoon and asked if the police had been by the house. Jon encouraged McCarty to turn himself in to the police. Jon later told the police McCarty's whereabouts and the vehicle he was driving.

The police obtained a warrant for McCarty's arrest, and McCarty was arrested in Navarro County. Officer Rodney Irvin, with the Mexia Police Department, went to Navarro County to question McCarty. McCarty admitted that he took the Norco pills from the Mexia CVS. McCarty told Officer Irvin the locations where he placed some of the stolen pills. After interviewing McCarty, Officer Irvin went to the locations given by McCarty. At the first location, police recovered two bottles of Norco. At a second location, the police found an empty bottle of Norco. The police were able to recover 1070 of the 2190 Norco pills stolen.

### Jury Charge

In the first issue, McCarty argues that the trial court erred by failing to properly define the terms "intentionally" and "knowingly" in the jury charge. We will first determine whether the charge was erroneous. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

A conviction for robbery requires that the State prove, beyond a reasonable doubt, that in the course of committing a theft, and with the intent to obtain or maintain control of the property, the defendant "intentionally, knowingly, or recklessly causes bodily injury to another; or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02 (a) (1) (2) (West 2011). The charge provided the following definition for intentionally and knowingly:

> A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct.
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct.

The Texas Penal Code allows each element of an offense to be placed into one of three categories: (1) the nature of the conduct; (2) the result of the conduct; or (3) circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03 (West 2011); *Cook v. Texas*, 884 S.W.2d 485 (Tex. Crim. App. 1994).

McCarty argues that the all three conduct elements are involved in a robbery case citing *Fields v. State*, 966 S.W.2d 736 (Tex.App. – San Antonio, 1998), *rev'd on other grounds*, 1 S.W.3d 687 (Tex. Crim. App. 1999). In *Fields*, the court stated:

> A Texas court of appeals has held that all three conduct elements are involved in aggravated robbery offenses. *See Garza v. State*, 794 S.W.2d 497, 500-01 (Tex.App.--Corpus Christi 1990, pet. ref'd). The State must prove that the defendant caused or placed another in fear of bodily injury (a result of his conduct) and that he unlawfully appropriated property (the nature of his conduct), and the robbery itself is committed in the course of the commission of a theft (circumstances surrounding the conduct). *Id*. The Texas Court of Criminal Appeals has held that, where all three conduct elements are implicated, the trial judge must still limit the definitions in the jury charge to the conduct element or elements of the

offense to which they apply. *See Patrick v. State*, 906 S.W.2d 481, 492 (Tex.Crim.App.1995).

*Fields v. State*, 966 S.W.2d at 739. McCarty contends that the trial court should have charged the jury as follows:

> The following definitions apply to the mental state for threatening or placing another in fear of imminent bodily injury or death:
>
> > A person acts "intentionally" or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
> >
> > A person acts "knowingly" or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> The following definitions apply to the mental state for the unlawful appropriation of property:
>
> > A person acts "intentionally" or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct.
> >
> > A person acts "knowingly" or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct.
>
> The following definition applies to the mental state for conduct committed in the course of committing theft of property:
>
> > A person acts "knowingly" or with knowledge, with respect to the circumstances surrounding his conduct when he is aware that the circumstances exist.

A person commits the offense of robbery by (1) intentionally, knowingly, or recklessly causing bodily injury to another; or (2) intentionally or knowingly threatening or placing another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02 (a) (1) (2) (West 2011). Similarly, assault may be committed by

either causing bodily injury to another or threatening to cause bodily injury to another. *See* TEX. PENAL CODE ANN. § 22.01 (a) (1) (2) (West 2011). Bodily injury assault is a result-oriented assaultive offense and assault by threat is conduct-oriented, focusing upon the act of making a threat, regardless of any result that threat might cause. *See Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008).

The indictment alleged that McCarty committed the offense of robbery by intentionally or knowingly threatening Verlander or placing him in fear of bodily injury or death. The charge properly defined intentionally and knowingly in relation to the nature of the conduct element.

Moreover, McCarty did not object to the jury charge; therefore, any error must be so egregious that appellant did not receive a fair and impartial trial. *Almanza v. State*, 686 S.W.2d at 171. Looking at the entire charge, the application paragraph of the charge served to limit the culpable mental states to their relevant conduct elements. Also, McCarty was captured on the store surveillance video. He was identified by a picture taken from the video and his brother testified that McCarty said that he committed the robbery. Verlander testified that McCarty told him not to be foolish so no one would get hurt. Verlander was afraid he would be injured or killed. Any error in the trial court's charge was not so egregious that McCarty did not receive a fair trial. We overrule the first issue.

## Motion to Suppress

In his second issue, McCarty argues that the trial court erred in denying his motion to suppress his statement to the police. In reviewing a trial court's ruling on a

motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). Because the trial court is the exclusive fact finder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State*, supra. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State*, supra; *Davila v. State*, 4 S.W.3d 844, 847-48 (Tex.App.-Eastland 1999, no pet'n). We review questions involving legal principles and the application of law to established facts de novo. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).

Officer Irvin read McCarty the *Miranda*[2] warnings before he began questioning him. McCarty said that he understood his rights, and he agreed to talk to Officer Irvin. McCarty admitted taking the Norco pills from the store and informed Officer Irvin where he could find some of the stolen pills. Officer Irvin was able to recover some of the stolen pills based upon that information. McCarty argues that his statement was not voluntary because he was suffering from withdrawal symptoms during the interrogation.

Officer Irvin testified at the hearing on the motion to suppress that McCarty did not appear to be under the influence of drugs. Officer Irvin stated that McCarty was

---

[2] *Miranda v Arizona*, 384 U.S. 436 (1966).

"rocking back and forth" but that he had no trouble giving details of the crime. McCarty was able to communicate effectively with Officer Irvin, and he gave reliable information about the offense. The trial court heard the audiotape recording of the interview and found that the statement was given voluntarily. The trial court did not abuse its discretion in denying the motion to suppress. We overrule the second issue.

## Conclusion

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed October 3, 2013
Do not publish
[CRPM]