**Douglas Elwood FIELDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–97–00068–CR.**

Court of Appeals of Texas,
San Antonio.

March 25, 1998.

Michael C. Gross, San Antonio, for Appellant.

Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before LÓPEZ, STONE and GREEN, JJ.

## OPINION

LÓPEZ, Justice.

### INTRODUCTION

Appellant, Douglas Fields, was convicted by a jury of aggravated robbery by using and exhibiting a deadly weapon. Evidence at trial showed that Fields, with two other men, entered a liquor store and robbed the clerk working there at gunpoint. Fields was sentenced to forty-five years in prison and fined $10,000. He appeals his verdict on four points of error, claiming that the trial court committed reversible error by (1) failing to limit the definition of "intentional" in its charge to the jury to the pertinent conduct element of the underlying offense, (2) failing to limit the definition of "knowing" to the pertinent conduct of the underlying offense, (3) refusing to allow Fields to call a rebuttal witness in the punishment phase of the trial, and (4) failing to provide a definition of "reasonable doubt" in its jury charge during the punishment phase of the trial.

### THE JURY CHARGE

In points of error one and two, Fields argues that the trial court committed reversible error by failing to limit its definitions of "knowing" and "intentional" to the relevant conduct elements of the underlying offense. To support this contention, Fields relies on *Ash v. State* in which the court held that a trial judge errs "in failing to limit the definitions [in the jury charge] to the conduct element or elements of the offense to which they apply." *See Ash v. State,* 930 S.W.2d 192, 195 (Tex.App.—Dallas 1996, no pet.)

A conviction for robbery requires that the State prove, beyond a reasonable doubt, that in the course of committing a theft, and with the intent to obtain or maintain control of the property, the defendant "intentionally, knowingly, or recklessly causes bodily injury to another; or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PEN.CODE § 29.02 (Vernon 1994). On the facts in Fields's case, aggravated robbery may have been committed by the commission of robbery plus one of two aggravating factors: causing bodily injury to the victim, or using or exhibiting a deadly weapon. *Id.* § 29.03.

In its charge to the jury, the trial court defined the requisite mental states, "intentionally" and "knowingly," tracking the statutory definitions for those terms:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. . . .

TEX. PEN.CODE § 6.03 (Vernon 1994). The judge applied the definitions to Fields's case as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 16th day of May, A.D., 1994 in Bexar County, Texas, the defendant, Douglas Fields, either acting alone or together with another as a party, did *intentionally or knowingly threaten or place William Tabor in fear of imminent bodily injury or*

*death, by using or exhibiting a deadly weapon,* namely: a firearm while the said Douglas Fields was in the course of committing theft of property ... and said acts were committed by Douglas Fields *with the intent then and there to obtain or maintain control of the property,* then you will find the defendant guilty of aggravated robbery with a deadly weapon as charged in the indictment.

If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

(emphasis added). The defense attorney did not object to this charge. On appeal, Fields claims that the charge allowed the jury to confuse which conduct elements applied to which element of the offense, and thus egregious harm, which requires no preservation for appeal, occurred. We reject this claim.

A "conduct element" is basically that element of the offense that makes the defendant's conduct proscribable. The Texas Penal Code identifies three "conduct elements" that may be implicated in a given crime: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *See* TEX. PEN.CODE § 6.03 (Vernon 1994) (defining culpable mental states); *Cook v. State,* 884 S.W.2d 485, 487 (Tex.Crim.App.1994) (interpreting section 6.03 of Texas Penal Code). Texas courts require that, in the judge's charge to the jury, the "intentional" and "knowing" requirements be confined to the specific conduct element required to prove the alleged offense. *Ash,* 930 S.W.2d at 194.

A Texas court of appeals has held that all three conduct elements are involved in aggravated robbery offenses. *See Garza v. State,* 794 S.W.2d 497, 500–01 (Tex.App.— Corpus Christi 1990, pet. ref'd). The State must prove that the defendant caused or placed another in fear of bodily injury (a result of his conduct) and that he unlawfully appropriated property (the nature of his conduct), and the robbery itself is committed in the course of the commission of a theft (circumstances surrounding the conduct). *Id.* The Texas Court of Criminal Appeals has held that, where all three conduct elements are implicated, the trial judge must still limit the definitions in the jury charge to the conduct element or elements of the offense to which they apply. *See Patrick v. State,* 906 S.W.2d 481, 492 (Tex.Crim.App.1995).

The State contends that, because aggravated robbery includes all three conduct elements, the trial court properly submitted the complete definitions of the culpable mental states. The State misunderstands Fields's argument. Fields admits that the complete definitions were required. As we understand his argument, Fields is challenging the failure of the trial court to limit each definition to its pertinent conduct element. An appropriate jury charge, according to Fields, would state: "The following definition applies to the mental state in causing or placing another in fear of bodily injury: A person acts 'intentionally,' or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result," and so on for each conduct element. *See Hughes v. State,* 897 S.W.2d 285, 296 n. 16 (Tex.Crim.App.1994) (providing example of correct jury charge when all three conduct elements are implicated).

We agree with Fields that the failure to so limit definitions of mental states constitutes error. *See id; Patrick,* 906 S.W.2d at 492; *Ash,* 930 S.W.2d at 195. Our next step, then, must be to determine whether this error amounts to such egregious harm that it may serve as the grounds for reversal, even though not preserved for appeal. *See Ash,* 930 S.W.2d at 195.

For unpreserved charge error to be reversible, the error must have so harmed the defendant that he was denied a fair and impartial trial as the result of the error. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1984). Thus, the harm must be "egregious." *Id.* A reviewing court must look at the entire charge to determine if the harm meets this high standard. *Id.* Factors to consider are the charge itself; the state of the evidence, including the contested issues; arguments of counsel; and any other relevant information. *See Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996); *Bailey v. State,* 867 S.W.2d 42, 43 (Tex.Crim.App.

1993) (describing procedures for conducting harm analysis).

In *Ash,* the court of appeals found, under nearly identical circumstances as those presented here, that the application portion of the jury charge, served to limit the culpable mental states to their relevant conduct elements. *See Ash,* 930 S.W.2d at 195. The application paragraph in *Ash* specifically described the manner and means of committing the robbery ("striking the complainant's head repeatedly against the pavement"), and the court held that this statement limited the definition to the results of the defendant's conduct. *Id.*

■ The court in *Ash* also looked at what issues were contested at trial, and found that relevant mental states were not among them. *Ash,* 930 S.W.2d at 195. In the case before us, as well, the error charged by Fields was not at issue at trial. Fields's sole defense was mistaken identification. He claimed that the victim in the case had not initially identified him as a culprit with any certainty and that the victim's memory could not be trusted. This contention was the bulk of the defense's case and nearly consumed the defense attorney's closing argument to the jury. Mental states and to which conduct element they applied were simply not contested. It is therefore difficult to see how the trial court's error could be considered harmful, let alone egregiously so. We overrule points of error one and two.

### REBUTTAL WITNESS

In his third point of error, Fields claims that the trial court committed reversible error when it refused to allow him to call a witness to rebut a charge that Fields had committed an extraneous offense. Fields claims that this refusal violated his Sixth Amendment right to obtain witnesses in his favor. *See* U.S. CONST., amend. VI. We reject this claim.

During the punishment phase of trial, Witness Henderson testified for the State that, on a previous occasion, Fields had robbed him at gunpoint and chased him to an apartment, where Fields attempted to shoot the witness. After cross-examining Henderson,

Fields's attorney requested that he be allowed to call Officer Lauderdale, who had prepared the report of this incident. Counsel stated that he wished to impeach Henderson's testimony with Henderson's prior inconsistent statements. The State objected on the grounds that Officer Lauderdale had not taken Henderson's statement at the time of the alleged robbery, and thus Lauderdale's testimony would serve as improper impeachment. Further, the State argued that the defense attorney had not laid the proper predicate for the use of extrinsic evidence to impeach the witness. *See* TEX. R.CRIM. EVID. 612(a) (requiring proponent to tell witness about prior inconsistent statement and to give witness opportunity to explain or deny making statement as predicate for admissibility). The trial judge sustained the State's objection.

■ The State claims that Fields has not properly preserved his error on this point. Although the defense did object to the trial court's ruling, he did not, according to the State, make an offer of proof as required by the rules of criminal evidence. *See* TEX. R.CRIM. EVID. 103 (a)(2). We believe that any error was sufficiently preserved. Rule 103 states that error is not preserved for appeal unless "[i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or *was apparent from the context within which the questions were asked." Id.* (emphasis added). Although Fields's attorney could have been clearer in both his questioning of the witness and his request to call Officer Lauderdale, we believe the context within which his questions were asked makes it clear that he desired to call Lauderdale to the stand to impeach portions of Henderson's testimony. Twice, Fields's attorney asked Henderson specifically if he had ever told a different story about the alleged robbery and shooting incident. In both cases, the substance of the desired impeachment evidence was made known. In addition, in his on-the-record conversation with the trial judge regarding his desire to call Officer Lauderdale, the attorney made it clear that he believed there were key inconsistencies between Henderson's trial statements and statements he had made earlier. *See Canto–Deport v. State,* 751

S.W.2d 698, 700 (Tex.App.—Houston. [1 st Dist.] 1988, pet. ref'd) (finding error preserved where substance of excluded evidence was clear from context of questioning). We find that this point of error was preserved.

■ However, we do not believe that defense counsel's questioning of Henderson was sufficient to lay a predicate for admission of extrinsic evidence of prior inconsistent statements. To lay such a predicate, an attorney must ask the witness if he made the contradictory statement at a certain place and time and to a certain person. *See Huff v. State,* 576 S.W.2d 645, 647 (Tex.Crim.App.1979) (discussing proper predicate for impeachment by prior inconsistent statement). If the witness denies making the statement, extrinsic proof may be admitted to prove the statement. *Id.* If he admits the statement, no extrinsic evidence is allowed. *Id.; see* TEX.R.CRIM. EVID. 612. Because this rule is designed to give the witness an opportunity to explain prior inconsistencies, the opposing party must provide the witness enough information to explain the prior statement or to admit or deny it. *See McGary v. State,* 750 S.W.2d 782, 786 (Tex.Crim.App.1988) (explaining reason for predicate requirement).

■ Here, the two questions suggesting a prior inconsistent statement did not give Henderson enough information to explain, deny, or admit his prior statements. Asking Henderson if he had ever said anything different to anyone at any time left Henderson in the dark as to what the attorney might be referring to. Even the most forthcoming witness might not be able to adequately respond to such a question. Therefore, we hold that a proper predicate was not laid for the introduction of extrinsic evidence to prove prior inconsistent statements. We overrule Fields's third point of error.

## REASONABLE DOUBT

In his fourth and final point of error, Fields contends that the trial court committed reversible error by failing to define "reasonable doubt" for the jury in the punishment phase of the trial. At the punishment phase, the court submitted the following instruction to the jury:

You are instructed that any evidence of an extraneous crime or bad act against the defendant must be proven by legal evidence beyond a reasonable doubt before you may consider same.

The judge did not define reasonable doubt. Fields's attorney did not object to this omission or request that the judge submit a definition. The judge had, however, defined reasonable doubt in the guilt/innocence phase of the trial.

■ Section 3(a) of article 37.07 of the Texas Code of Criminal Procedure requires that extraneous offenses introduced in the punishment phase of trial be proven beyond a reasonable doubt. *See* TEX.CODE CRIM. PROC. ANN. art. 37.03, § 3(a) (Vernon 1997). In *Geesa v. State,* the Texas Court of Criminal Appeals held that a definition of reasonable doubt is required in all criminal cases and no objection is required to preserve error when the trial court omits this definition from its jury charge. *See Geesa v. State,* 820 S.W.2d 154, 162–63 (Tex.Crim.App.1991) (adopting jury instruction on reasonable-doubt standard to be given in all criminal trials). *Geesa,* however, dealt with a trial court's failure to define reasonable doubt during the *guilt/innocence* portion of the trial. Nevertheless, section 3(b) of article 37.07 provides that:

After the introduction of such evidence has been concluded, ... the court shall give such additional written instructions as may be necessary and the order of procedure and *the rules governing the conduct of the trial shall be the same as are applicable on the issue of guilt or innocence.*

TEX.CODE CRIM. PROC. ANN. art. 37.03, § 3(b) (Vernon 1981) (emphasis added). Because the trial court must define reasonable doubt during the guilt/innocence phase, *see Reyes v. State,* 938 S.W.2d 718, 721 (Tex.Crim.App. 1996), section 3(b) then requires the court to define reasonable doubt to the jury during the punishment phase when the State relies on evidence of extraneous offenses as it did here. *See* TEX.CODE CRIM. PROC. ANN. art. 37.03, § 3(b) (Vernon 1981) (stating that procedural rules shall be the same in punishment phase of trial). Consequently, we find that the trial court erred when it failed to

define reasonable doubt in the court's charge to the jury. Next, we determine whether this failure resulted in reversible error.

Normally, charge error is reviewed using the standard set out in *Almanza v. State.* *See Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1985) (op. on reh'g) (addressing issue of reversible harm once error in jury charge is shown). But the Court of Criminal Appeals has determined that *Almanza* does not apply to constitutional error. *See Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim. App.1994) (stating that *Almanza* is limited to violations of articles 36.14 through 36.18 of the Code of Criminal Procedure that do not implicate state or federal constitutional rights). This court recently held that failure to instruct the jury on the reasonable-doubt standard during the punishment phase of trial is constitutional error. *See Huizar v. State,* 966 S.W.2d 702, 708 (Tex.App.—San Antonio 1998, no pet. h.) (determining that trial court must instruct jury on reasonable-doubt standard when State introduces extraneous-offense evidence during punishment phase). Since *Geesa* made the definition of reasonable doubt an inextricable part of the court's instruction on reasonable doubt, the trial court's failure to define reasonable doubt amounted to constitutional error. Because the failure was constitutional error, *Almanza* does not apply. *See Abdnor,* 871 S.W.2d at 733. *But see Splawn v. State,* 949 S.W.2d 867, 874–75 (Tex.App.—Dallas 1997, no pet.) (concluding that trial judge erred in denying defendant's request for definition of reasonable doubt in punishment charge where defendant pleaded guilty, and then conducting harm analysis under *Almanza* ); *Cormier v. State,* 955 S.W.2d 161, 163 (Tex. App.—Austin 1997, no pet.) (relying on *Mitchell v. State,* 931 S.W.2d 950 (Tex.Cr. App.1996) to determine that *Almanza* standard applied to this issue). Instead, Rule 44.2(a) of the Texas Rules of Appellate Procedure applies to determine whether failure to define reasonable doubt during the punishment phase resulted in reversible error. *See* Tex.R.App. P. 44.2(a) (old Rule 81(b)) (defining constitutional error); *Reyes v. State,* 938 S.W.2d at 721 n. 10 (Tex.Crim. App.1996) (stating that *Almanza* did not ap-

ply to *Geesa* ). With the foregoing in mind, we proceed to harm analysis.

Rule 44.2(a) directs the reviewing court to reverse punishment unless the court determines beyond a reasonable doubt that error did not contribute to punishment. *See* Tex.R.App. P. 44.2(a) (old Rule 81(b)). In this case, the court did not verbally instruct the jurors to apply the same definitions as used during guilt/innocence. To conclude that the trial court's failure did not contribute to Fields's punishment, we must assume that the jury *knew* to apply the same definition of reasonable doubt that it used to find guilt and that the jury used that definition in its consideration of Witness Henderson's testimony. Alternatively, we must assume that the jury *did not* consider Henderson's testimony when it assessed a sentence of forty-five years. We are not willing to make these assumptions in view of the heavy sentence assessed here. Consequently, we cannot conclude beyond a reasonable doubt that the failure to define reasonable doubt did not contribute to Fields's punishment. *But see Cormier,* 955 S.W.2d at 164 (deciding under *Almanza* that appellant failed to show that egregious harm resulted from court's failure to define reasonable doubt in punishment charge, without deciding whether court erred); *Levy v. State,* 860 S.W.2d 211 (Tex. App.—Texarkana 1993, pet. ref'd) (determining that failing to duplicate definition of reasonable doubt in punishment phase was not reversible error where trial judge specifically told jury that same instructions given in guilt-innocence phase of trial applied to punishment phase). Therefore, we sustain Fields's fourth point of error, and we remand for a new sentencing hearing.

Dissenting opinion by GREEN, J.

GREEN, Justice, dissenting.

I respectfully dissent because I believe the definitional instruction on reasonable doubt required by *Geesa* to be submitted to the jury in all criminal cases applies only to the guilt/innocence phase of a trial and not to the punishment phase. *See Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App.1991). In reading the adopted instruction set out in

743

*Geesa*, it plainly refers to the constitutional protections afforded to the accused that their guilt be proven beyond a reasonable doubt. The same constitutional protections do not apply after the accused has been found guilty.