NO. 07-02-0427-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 7, 2003

_____

LLOYD ORVILLE ROBERTSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 44,773-E; HONORABLE ABE LOPEZ, JUDGE

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

**OPINION**

In this appeal, appellant Lloyd Orville Robertson challenges his conviction of

aggravated robbery. His punishment was assessed by the trial jury at 40 years

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

confinement in the Institutional Division of the Department of Criminal Justice and a $10,000 fine. In pursuing his appeal, he presents three issues for our determination. In doing so, he argues 1) the trial court erred by failing to limit the definitions of "intentionally" and "knowingly" in the jury charge to the conduct elements of the offense to which they apply, 2) the evidence is factually insufficient to support a finding that appellant intentionally or knowingly threatened and placed Aileen Hollingsworth (the alleged victim) in fear of imminent bodily injury and death, and 3) the evidence is factually insufficient to support a finding that appellant intended to deprive the owner of property. Disagreeing that reversal is required, we affirm the judgment of the trial court.

Although the facts giving rise to the underlying prosecution are, in the main, undisputed, the nature of appellant's challenges requires us to briefly review the pertinent evidence. In the early morning of July 21, 2001, Aileen Hollingsworth, the assistant manager, opened the Toot'n Totum convenience store located at the intersection of Grant and Amarillo Boulevard in Amarillo. As she did so, she noticed a van backed up to the door and saw a man, later identified as appellant, get out of the van carrying a three-foot knife, commonly referred to as a machete, and enter the store. Hollingsworth testified that when she saw appellant enter the store with the machete, she was frightened. Appellant told Hollingsworth he was thirsty, and she replied that if he would put the knife down, she would get him a glass of water. Hollingsworth said that appellant then started "talking in the air to–I'm thinking its just somebody that wasn't there. I didn't see anybody." She continued by saying that he started "flinging the knife around, and just scaring me," so she

stayed with her back to an office door that she could go through and lock, if necessary. She also averred he "walked around there, where I was standing, and stayed there. And then he walked over to the door, and then he turned to me, and he said, well, if you're not going to give me any water, I will." She told him to "[d]o whatever you want." She testified she said this because appellant still had the three-foot knife in his hand and "I wasn't moving." Appellant walked over to the Culligan display, got a gallon container of water, went to the front door, squatted, and began drinking the water. He then went out to the parking lot. During the time appellant was in the store, Hollingsworth called 911 several times. Although she had stopped shoplifters several times before, she said, she did not try to stop appellant because of his knife and her fear of him. She also said that appellant appeared to be intoxicated.

Police Officers Brian Campbell and Shane Chadwick testified that when they arrived, appellant was in the parking lot adjacent to the store building. He had the machete in his hand initially, waved it around, and told them he was not going to jail again. In order to restrain him and get the machete away, the officers were forced to use non-lethal force, including the use of a "bean-bag" shotgun (a shotgun that shoots bean-bag pellets instead of the more lethal regular pellets).

Murali Veeramachaneni, an Amarillo psychiatrist, testified about the effects of drug addiction. He averred that the abuse of controlled substances could lead to psychosis and bizarre behavior.

3

Appellant chose to testify. He said he had been ingesting and shooting methamphetamine prior to the occurrence in an effort to commit suicide. As a result, he said, he did not remember how he arrived at the store, and the first thing he remembered was backing his van up to its door. He was thirsty, he said, and wanted to go into the store and purchase some water to quench his thirst. Although he was aware that he was carrying a machete under his arm, he swore he did not intend to place Hollingsworth in fear of imminent bodily injury. At one point, he said, he had put the machete under his arm to get his wallet to pay for the water but when he could not find it, he assumed that he had left the wallet in his pickup. He was aware that he was frightening Hollingsworth, but he did not intend to do so. He averred he told her he would not harm her. He also swore he did not intend to steal the water, and that he was in the process of going to his van to get his wallet when the officers arrived.

Appellant admitted he had had a drug problem for a number of years and had committed some violent actions in the past. He also admitted that he was aware that a machete was capable of causing serious bodily injury or death when he entered the store, but was adamant that he did not intend to harm the clerk or steal the water.

As we noted, in his first issue, appellant argues that the trial court committed reversible error in its charge in the guilt-innocence phase of the trial by failing to limit its definitions of "knowing" and "intentional" to the relevant conduct elements of the underlying offense. Appellant made no trial objection to the court's charge.

4

To sustain the conviction for aggravated robbery, the State must have proved beyond a reasonable doubt that the defendant, in the course of committing theft, and with the intent to obtain or maintain control of the property, "intentionally or knowingly" threatened or placed Hollingsworth in fear of imminent bodily injury or death and, in the course of committing a robbery, used or exhibited a deadly weapon. Tex. Pen. Code Ann. §§ 29.02 and 29.03 (Vernon 2003). In the indictment, and in relevant part, the State charged that appellant:

> . . . did then and there, while in the course of committing theft of property, to-wit: bottled water, and with intent to obtain and maintain control of said property, intentionally or knowingly threaten and place AILEEN HOLLINGSWORTH in fear of imminent bodily injury and death, and the defendant did then and there use and exhibit a deadly weapon, to-wit: a machete that in the manner of its use or intended use was capable of causing death or serious bodily injury.

In its guilt-innocence charge, the trial court instructed the jury on the meaning of "intentionally" and "knowingly" and applied those definitions to the facts of the case as follows:

> A person acts intentionally, or with intent, with respect to the nature of his conduct, or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct, or to the circumstances surrounding his conduct, when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

5

* * *

Now if you find from the evidence beyond a reasonable doubt that on or about July 21st, 2001, in Potter County, Texas, the defendant, LLOYD ORVILLE ROBERTSON, did then and there, while in the course of committing theft of property, to-wit: bottled water, and with intent to obtain and maintain control of said property, did intentionally or knowingly threaten or place Aileen Hollingsworth in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to wit: a machete, that in the manner of its use or intended use was capable of causing death or serious bodily injury, then you will find the defendant guilty of aggravated robbery as charged.

In supporting his proposition that the trial court erred, appellant emphasizes that the thrust of his defense was that he did not intend to place anyone in fear of imminent bodily injury or death and did not intend to commit theft. He points out that the evidence produced by both himself and the State was essentially the same except in regard to his mental state. He refers to his testimony that he intended to purchase something to drink, but discovered he did not have his wallet and was prevented from obtaining his wallet by the actions of the police. Appellant also refers to his testimony that he had the machete because of his fear of imaginary people. He references Hollingsworth's testimony that he was talking to people who were not there and waving the machete as he did so. All of this, he concludes, shows the primary contested issue at trial was his mental state and was the crux of his defense.

In arguing the court's charge was not sufficient, appellant relies upon the teaching of cases such as *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106, 116 S.Ct.1323, 134 L.Ed.2d 475 (1996); *Fields v. State*, 966

6

S.W.2d 736, 739 (Tex. App.–San Antonio 1998), *remanded on other grounds*, 1 S.W.3d 687 (Tex. Crim. App. 1999); and *Ash v. State,* 930 S.W.2d 192*,* 194 *(*Tex. App.–Dallas 1996, no pet.), that the "intentional" and "knowing" references in a court's charge be confined to the specific conduct element required to prove the alleged offense. He argues that the trial court's application paragraph fails to describe the manner and means of committing the robbery and "fails to limit the culpable mental states to the result of [a]ppellant's conduct in any manner" and, thus, was in error. He reasons the trial court should have limited the bodily injury definition as follows:

> The following definition applies to the mental state in placing Aileen Hollingsworth in fear of imminent bodily injury or death: A person acts 'intentionally' or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. A person acts knowingly, or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Appellant also argues the court should have limited the appropriation of property definition as follows:

> The following definition applies to the mental state in appropriation of property: A person acts 'intentionally,' or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. A person acts knowingly, or with knowledge with respect to the nature of his conduct when he is aware of the nature of his conduct.

He further posits that the court should have limited the definition referring to "in the course of committing theft" as follows:

The following definition applies to the mental state in the course of committing theft: A person acts 'intentionally,' or with intent, with respect to the circumstances surrounding his conduct when he is aware that the circumstances exist. A person acts knowingly, or with knowledge with respect to the circumstances surrounding his conduct when he is aware the circumstances exist.

Recognizing that no trial objection to the court's charge was made on his behalf, appellant now contends that the error was so egregious that reversal is required. Although the State does not concede there was reversible error in the charge, it does concede Texas courts require that in the judge's charge to the jury on guilt or innocence, "the 'intentional' and 'knowing' requirements be confined to the specific conduct element required to prove the alleged offense."

For unpreserved charge error to be reversible, the error must be "egregious," that is, it must have so harmed the defendant that he was deprived of his right to a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The reviewing court must assay the harm in light of the entire record, including the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, and any other relevant information revealed by the record of the trial as a whole. *Id.; see also Hutch v. State,* 922 S.W.2d 166*,* 170-74 (Tex. Crim. App. 1996). The same rule applies even in a case such as this one in which the principal issue was the intent of the defendant. It is also established that intent can be inferred from the acts, words, and conduct of the accused. *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980).

8

In this case, the charge included the full definitions of "intentionally" and "knowingly." The general instructions in the charge were related to the conduct required for conviction by the reference in the application paragraph that a conviction must be predicated upon the jury finding beyond a reasonable doubt that appellant intentionally or knowingly did "threaten or place Hollingsworth in fear of imminent bodily injury." Thus, the term intentionally or knowingly directly modifies and refers to the phrase "threaten or place in fear of imminent bodily injury." When the terms "intentionally" and "knowingly" are viewed in their factual context, together with the application paragraph, the jury was directed to the appropriate portion of the definitions and were not misled as to the degree of proof required.

Additionally, in the application paragraph, the jury was required to find as a threshold matter that appellant intended to unlawfully appropriate property before it could convict him of aggravated assault. Thus, if the jury found that appellant lacked the intent to commit theft, it was required to acquit appellant even if it believed that he intentionally or knowingly placed Hollingsworth in fear of imminent bodily injury. Suffice it to say, appellant did not suffer egregious injury by the submission of the charge as written. Appellant's first issue is overruled.

As we noted above, in his second issue, appellant challenges the factual sufficiency of the evidence to support a finding that appellant intentionally or knowingly threatened and placed Hollingsworth in fear of imminent bodily injury or death.

9

The standards by which an appellate court judges the factual sufficiency of the evidence are by now well established. Succinctly stated, the reviewing court views all the evidence without the prism of "in the light most favorable to the prosecution." The jury's verdict may only be set aside if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. In performing its review of a jury verdict, an appellate court must defer to the factfinder's determination concerning what weight to give contradictory testimony. *Johnson v. State*, 23 S.W.3d 1, 7-9 (Tex. Crim. App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).

When robbery is committed by threats or by placing another in fear, that fear must be of such a nature as in reason and common experience is likely to induce a person to part with his or her property against their will. *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989). In order to commit the offense, the accused must have had the specific intent to place any person in fear of imminent serious bodily injury. *Dues v. State*, 634 S.W.2d 304, 305-06 (Tex. Crim. App. 1982). Intent can be inferred from the acts, words, and conduct of the accused. *Id.* at 305*; Beltran v. State,* 593 S.W.2d at 689; *Romo v. State*, 593 S.W.2d 690, 693 (Tex. Crim. App. 1980), *overruled on other grounds by Wagner v. State,* 687 S.W.2d 303 (Tex. Crim. App. 1984). The accused's intent cannot be determined merely from what the victim thought at the time of the offense, and it is immaterial to the offense whether the accused had the capability or the intention to carry out his threat. Indeed, all that is necessary to complete the offense is that the accused by

10

his threat sought, as a **desired** reaction, to place a person in fear of imminent serious bodily injury. *Dues v. State*, 634 S.W.2d at 306.

In contending the evidence is factually insufficient, appellant points to the testimony of Dr. Veeramachaneni, in response to a hypothetical question, that a person who has consumed methamphetamines at least three times a day, talks to people who are not there, and acts paranoid would be delusional and psychotic. Appellant averred he had been ingesting methamphetamines. Additionally, he also testified that he did not intend to place Hollingsworth in fear of death or imminent bodily injury and denied that he threatened her. He also said he was having some paranoid delusions. He admitted that he was aware that Hollingsworth was frightened and averred that he attempted to calm her when he told her he would not hurt her.

However, the evidence also showed that appellant backed his van up to and came into the store bearing a three-foot machete, that he asked Hollingsworth for water and she asked him to put the machete down, that she was fearful and would not move but stayed by the door, that appellant brandished the machete and took water from the store, and he retained the machete as he left the store. Hollingsworth testified that she was in such fear that she had pushed the 911 button several times while appellant was in the store, because of her fear she stayed by a door that was a potential escape route, and she locked the door as soon as he left, again because she was afraid of him.

11

Viewed in the light by which we must view it, we cannot say that the jury's verdict was so against the overwhelming weight of the evidence as to be manifestly unjust, that it clearly demonstrated bias, or that it shocks the conscience. Appellant's second issue is overruled.

In his third issue, appellant contends the evidence is factually insufficient to support a finding that appellant intended to deprive the owner of property. In considering this argument, we note the rule that an intent to deprive must be determined from the words and acts of the accused and that intent must exist at the time of the taking. *See Banks v. State*, 471 S.W.2d 811, 812 (Tex. Crim. App.1971); *Roberson v. State*, 821 S.W.2d 446, 448 (Tex. App.–Corpus Christi 1991, pet. ref'd); *Draper v. State*, 539 S.W.2d 61, 68 (Tex. Crim. App. 1976). The gist of appellant's contention is that the evidence shows his conduct was consistent with his testimony that he did not intend to steal the bottle of water. He reasons the evidence shows that he made no demands of Hollingsworth and she told him to help himself to the water. He posits that this evidence, when taken together with his assertion that he went into the store intending to buy something to drink, that he discovered he did not have his wallet, and he was prevented by the actions of the police from determining if his wallet was in his vehicle and paying for the water shows that the evidence, taken as a whole, is not sufficient to sustain the verdict of the jury.

We disagree. As we have noted, the evidence shows that appellant walked into the store, told the clerk he wanted water, took the bottle of water, and without saying anything

12

to the clerk about his wallet being in the car, walked past the cash register and onto the parking lot while imbibing the water.  The jury would have been justified in concluding that the remark of the clerk about taking the water was because of her perceived fear of appellant and the weapon he carried.  Reiterated, the intent to maintain or obtain control of property or the intent to deprive the owner of property may be determined by the factfinder from the words and acts of the accused.  *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981).  Appellant's third issue is overruled.

In summary, all of appellant's issues are overruled, and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.