Opinion issued December 4, 2008 


In The 

Court of Appeals


For The 



First District of Texas

NO. 01-07-00776-CR 

JOHN KENNETH SUTTON, AppellantV.THE STATE OF TEXAS, Appellee

On Appeal from the 230th District CourtHarris County, TexasTrial Court Cause No. 1103365


MEMORANDUM OPINION 

A jury found appellant, John Kenneth Sutton, guilty of the offense of aggravated robbery.[1] After finding true the allegations in two enhancement 

See TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003). 

paragraphs that appellant had two prior felony convictions, the jury assessed his punishment at confinement for fifty-eight years. In four points of error, appellant contends that the evidence is factually insufficient to support the jury’s implied finding that he intentionally or knowingly placed the complainant in fear of imminent bodily injury and death and the trial court erred in denying his requested jury charge on theft from a person as a lesser-included offense, not limiting the culpable mental state definition in the jury charge to the distinct elements of the offense, and admitting evidence of his alleged gang involvement because the evidence was more prejudicial than probative. 

We affirm. 



Factual and Procedural Background 

Roger Pollex, the complainant, testified that at approximately 7:30 p.m., after he parked his car on the street near his home, appellant walked up to him and asked for a cigarette and then for a ride. The complainant denied both requests, and appellant walked away. After the complainant carried some luggage into his home and returned to his car to get more luggage, appellant again approached the complainant and offered to pay him $10 for a ride. The complainant declined and suggested that appellant take the bus. Appellant then asked the complainant for a dollar for the bus, and the complainant agreed, took out his wallet, and removed a rubber band that was holding his cash and credit cards. Appellant then pulled a gun from his hooded sweatshirt, pointed it at the complainant’s chest, and told the complainant, “Don’t do anything stupid.” The complainant stated that he was afraid, he dropped the money, backed away, and told appellant “it’s all yours, you can have it.” The complainant then slowly walked away with his back toward appellant, took a few steps, turned around, and saw appellant walking toward a nearby gas station down the street. The complainant’s wallet was no longer on the ground, and approximately $21 dollars remained on the ground blowing in the wind. The complainant had been carrying $400, credit cards, a driver’s license, and a gift card in his wallet. As appellant took his property, the complainant was in fear when appellant aimed the firearm at him, and he thought that he was going to be shot in the back. 

After appellantleft the scene, the complainant called for emergency assistance. Because he was “freaked out” and could not believe that he had been robbed, the complainant was unsuccessful in his first few attempts to call for emergency assistance. Nevertheless, the complainant saw appellant walk around a truck parked at the nearby gas station, and, as soon as appellant walked around the truck, the truck pulled out and left the gas station. The complainant did not see appellant after this, and he thought that appellant had gotten into the truck that drove off. When police officers arrived, the complainant provided the officers with a description of the truck and appellant. Later that night, the complainant went to the gas station and viewed the store surveillance video. Although he did not see appellant in the video, he did see the truck that he had previously seen at the gas station and two men exit the truck, enter the store to buy items, and then get back into the truck and leave. The complainant then called to cancel his credit cards, but learned that one of his cards had already been used at a music store five to six miles from his home. When the complainant viewed that store’s surveillance video the next day, he saw a person, later identified as Mark Perez, use his credit card. The complainant informed police officers that the music store had a video of a man who was using the complainant’s credit cards. 

When police officers subsequently showed a photographic array to the complainant to identify the person who had robbed him, the complainant did not identify anyone. However, in viewing a second photographic array, the complainant identified appellant as the robber with 100% certainty. 

On cross-examination, the complainant agreed that appellant did not have facial hair on the night of the robbery but that he and all the other men depicted in the photographic array did have facial hair. The complainant also stated that, after appellant had pulled the gun on him, he began“backpedaling” away from appellant and saw appellant lean down. The complainant agreed that he did not actually see appellant pick anything up because, as appellant bent down, the complainant turned his back. The complainant also agreed that he was not sure if the truck he had seen at the gas station was involved in the robbery. 

Houston Police Officer Ballard testifiedthat he responded to the complainant’s call for emergency assistance and obtained from the complainant a description of the suspect and the truck at the gas station. After speaking with the complainant, it was Ballard’s understanding that the suspect had gotten into this truck. Ballard looked at surveillance video from the gas station, but no one in the video matched the suspect’s description. However, Ballard did see in the video a truck matching the description provided by the complainant. On cross-examination, Ballard agreed that it would be difficult to see someone entering or exiting a vehicle at the gas station from near the complainant’s house where the robbery occurred. 

Houston Police Sergeant Hooper testified that he obtained two videotapes, one from the music store showing a person using the complainant’s credit card and one from the gas station showing a truck thought to be involved in the incident. Hooper observed one individual in the gas station videotape who appeared to be the same individual using the complainant’s credit card in the music store. Officers identified this person of interest as Mark Perez and interviewed him. Based on the interview of Perez, Hooper was directed to an apartment complex where he located appellant. Hooper then assembled a photographic array and showed it to the complainant, who identified appellant as the man who had robbed him. 

Mark Perez, who had been previously convicted of theft and who, at the time of trial, was incarcerated for the state jail felony offense of credit card abuse for using the complainant’s credit cards, testified that on the night in question he was at the gas station with a friend buying ice cream. At some point, appellant, who Perez knew from the neighborhood, approached Perez. Appellant, who was in possession of a gun, got into Perez’s car and subsequently gave Perez three credit cards. Perez used the credit cards to buy compact discs at the music store. 



Factual Sufficiency 

In his second point of error, appellant contends that the evidence is factually insufficient to support the jury’s implied finding that he intentionally or knowingly placed the complainant in fear of imminent bodily injury and death because although he “produced a firearm” duringhissecond encounterwiththecomplainant,hedid not make any demands or say anything to threaten the complainant. Appellant asserts that the complainant should have just given appellant “the dollar that he had asked for” rather than dropping his entire wallet and backing away. 

In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if the proof of guilt is so obviously weak as to undermine confidence in the jury’s determination, i.e., that the verdict seems “clearly wrong and manifestly unjust,” or the proof of guilt, although legally sufficient, is nevertheless against the great weight and preponderance of the evidence. Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). We note that a jury is in the best position to evaluate the credibility of witnesses, and we afford “due deference” to the jury’s determinations. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). Although we should always be “mindful” that a jury is in the best position to pass on the facts and that we should not order a new trial “simply because [we] disagree[ ] with the verdict,” it is “the very nature of a factual-sufficiency review that . . . authorizes an appellate court, albeit to a very limited degree, to act in the capacity of a so-called ‘thirteenth juror.’” Watson, 204 S.W.3d at 416–17. Thus, when an appellate court can “say, with some objective basis in the record, that the great weight and preponderance of the (albeit legally sufficient) evidence contradicts the jury’s verdict[,] . . . it is justified in exercising its appellate fact jurisdiction to order a new trial.” Id. at 417. 

A person commits the offense of robbery if in the course of committing theft and withintent to obtain ormaintain control of the property, the person “intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.” 

TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2003). The offense of robbery is elevated to the offense of aggravated robbery if the person “uses or exhibits a deadly weapon.” Id. § 29.03(a)(2) (Vernon 2003). A firearm is considered a deadly weapon. Id. § 1.07(a)(17)(A) (Vernon Supp. 2008). 

Here, although it is undisputed that appellant did not produce a firearm while approaching the complainant during the first encounter, the complainant testified that during the second encounter, appellant pointed a gun at his chest and told him “Don’t do anything stupid.” The complainant further testified that he was in fear when appellant aimed the gun at him, he told appellant that he could have everything, he dropped his wallet and backed away, and he thought he was going to get shot in the back. Contrary to appellant’s assertions, the complainant’s testimony about his second encounter with appellant directly contradicts appellant’s assertion that appellant, even after producing a firearm and making threatening remarks, was still only seeking one dollar for bus fare. We conclude that the evidence is not so obviously weak such that the verdict is clearly wrong and manifestly unjust, or that the proof of guilt is against the great weight and preponderance of the evidence. Accordingly, we hold that the evidence is factually sufficient to support the jury’s implied finding that appellant intentionally or knowingly placed the complainant in fear of imminent bodily injury or death. See Robinson v. State, 596 S.W.2d 130, 133 n.7 (Tex. Crim. App. 1980); Johnson v. State, 541 S.W.2d 185, 187 (Tex. Crim. App. 

1976). We overrule appellant’s second point of error. 



Lesser-Included Offense 

In his first point of error, appellant argues that the trial court erred in denying his requested jury charge on theft from a person as a lesser-included offense because “if the jury [believed] that appellant took [the complainant’s] property without his effective consent, but they had a reasonable doubt as to whether appellant intentionally or knowinglythreatened or placed [the complainant] in fear of imminent bodily injury or death, they could have found him guilty of only theft from a person.” See TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2008) (stating that person commits an offense of theft “if he unlawfully appropriates property with intent to deprive the owner of property”). 

An offense is a lesser-included offense if: 


(1) 

it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; 


(2) 

it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; 


(3) 

it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or 



(4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006). In the first step of our analysis, we determine as a matter of law whether a party may be entitled to a lesser-included offense instruction. See Hallv. State, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). This step “does not depend on the evidence to be produced at the trial.” Id. Rather, this analysis “must be[] capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense.” Id. at 535–36. In the second step of our analysis, we determine the availability of a lesser-included instruction by considering “whether there is some evidence adduced at trial to support such an instruction.” Id. at 535. A defendant is entitled to an instruction on a lesser-included offense where the proof of the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. Id. at 536. In this step of the analysis, anything more than a scintilla of evidence may be sufficient to 

entitle a defendant to a lesser-included offense charge. Id. In other words, the evidence must establish the lesser-included offense as “a valid, rational alternative to the charged offense.” Id. 

Here, appellant contends that theft was a lesser-included offense of the aggravated robbery committed against the complainant. We first look to the allegations in the indictment. The State, in its indictment, alleged that appellant unlawfully, while in the course of committing theft of property owned by the complainant and with intent to obtain and maintain control of the property, intentionally and knowingly threatened and placed the complainant in fear of imminent bodily injury and death and that appellant used and exhibited a deadly weapon, a firearm. We then compare these elements with the elements of the offense of theft of a person: “A person commits an offense [of theft] if he unlawfully appropriates property with intent to deprive the owner of property.” TEX. PENAL CODE ANN. § 31.03(a). We then ask the question that article 37.09(1) poses: are the elements of the purported lesser offense “established by proof of the same or less than all the facts required to establish the commission of the offense charged?” In this case, the answer is yes. 

We now turn to the second step, in which we must determine whether some evidence exists in the record that would permit a jury to rationally find appellant guilty of only the lesser offense of theft. See Hall, 225 S.W.3d at 536. Appellant asserts that “the record in this case reflects no threatening words connected to a demand for money” and that “no actual taking of money was seen by any witness.” Appellant’s assertions are directly contradicted by the record. The complainant testified that, after he pulled his wallet from his pocket to give appellant one dollar, appellant pulled a firearm from his jacket, pointed it at the complainant’s chest, and told the complainant not to do “anything stupid.” As the complainant walked away, he feared that appellant was going to shoot him in the back. We conclude that there is no evidence to show that, if appellant was guilty, he was guilty only of theft. Thus, he was not entitled to a lesser-included offense instruction on theft. Accordingly, we hold that the trial court did not err in denying appellant’s request for a lesser-included offense instruction. 

We overrule appellant’s first point of error. 



“Conduct Elements” 

In his third point of error, appellant argues that he suffered egregious harm because the trial court, in its charge to the jury, failed to limit the culpable mental state definition to the “distinct conduct elements of the offense of aggravated robbery.” 

Appellant’s primary complaint concerns the definitions of the terms “intentionally” and “knowingly” in the trial court’s charge. The trial court defined these terms, in accordance with their statutory definitions, as follows: 

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. 

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. 

See TEX. PENAL CODE. ANN. § 6.03(a), (b) (Vernon Supp. 2008). 

In the application paragraph, the trial court charged, 

Now, if you find . . . that [appellant] did then and there unlawfully, while in the course of committing theft of property owned by [the complainant] and with intent to obtain or maintain control of the property, intentionally or knowingly threaten[ed] or place[d] [the complainant] in fear of imminent bodily injury or death, and [appellant] did then and there use or exhibit a deadly weapon, to wit: a firearm, then you will find [appellant] guilty of aggravated robbery. 

Appellant did not object to the jury charge. 

As recited above, to obtain a conviction for robbery, the State had to prove 

beyond a reasonable doubt that “in the course of committing theft” and “with intent 

to obtain or maintain control of the property,” appellant “intentionally or knowingly 

threaten[ed] orplace[d] [the complainant] infearofimminent bodily injury or death.” 

See id. § 29.02(a)(2). In order to obtain a conviction for aggravated robbery, the State 

also had to prove that appellant “use[d] or exhibit[ed] a deadly weapon,” namely a firearm. Id. §§ 1.07(a)(17)(A), 29.03(a)(2). 

There are essentially three “conduct elements” that may be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. Id. § 6.03; McQueen v. State, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); Fields v. State, 966 S.W.2d 736, 739 (Tex. App.—San Antonio 1998), rev’d on other grounds, 1 S.W.3d 687 (Tex. Crim. App. 1999). Aggravated robbery contains all three conduct elements. Fields, 966 S.W.2d at 739; Ash v. State, 930 S.W.2d 192, 194 (Tex. App.—Dallas 1996, no pet.); Garza 

v. State, 794 S.W.2d 497, 500–01 (Tex. App.—Corpus Christi 1990, pet. ref’d). In order to prove a defendant guilty of the offense of aggravated robbery, the State must prove that the defendant “unlawfully appropriate[s],” which refersto thenature of the conduct. See TEX. PENAL CODE ANN. §§ 29.02(a), 31.03; Ash, 930 S.W.2d at 195; Fields, 966 S.W.2d at 739. The State must also prove that the defendant caused or placed another in fear of bodily injury, which refers to the result of the conduct. Fields, 966 S.W.2d at 739. The State must further prove that the defendant caused or placed another in fear of bodily injury “in the course of committing theft,” which refers to the circumstances surrounding the conduct. Ash, 930 S.W.2d at 195. 

The Texas Court of Criminal Appeals has held that when an offense implicates all three conduct elements, a trial court errs in not limiting the definitions to the conduct element or elements of the offense to which they apply. Patrick v. State, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); see Fields, 966 S.W.2d at 739; Ash, 930 S.W.2d at 195. Accordingly, we hold that the trial court erred in not limiting the definitions of “intentionally” and “knowingly” in the jury charge to the conduct element or elements to which they apply. See Fields, 966 S.W.2d at 739; Ash, 930 S.W.2d at 195. 

When, as here, a defendant fails to object or states that he has no objection to a charge, we willnotreverse for jury-charge error unless therecord shows “egregious harm” to the defendant. Bluitt v. State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Under the Almanza egregious-harm standard, the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. Almanza, 686 S.W.2d at 174. Egregious harm consists of error affecting the very basis of the case or depriving the defendant of a valuable right, vitally affecting a defensive theory, or making the case for conviction or punishment clearly and significantly more persuasive. Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); Martinez v. State, 190 S.W.3d 254, 259 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). To determine whether a defendant has sustained harm from a non-objected-to instruction, we consider (1) the entire charge, (2) the state of the evidence, (3) arguments of counsel, and (4) any other relevant information. Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). 

Appellant does not clearly explain how he suffered egregious harm. Rather, in support of his argument that he suffered egregious harm, appellant relies on Brooks 

v. State, 967 S.W.2d 946 (Tex. App.—Austin 1998, no pet.). In Brooks, the jury was deadlocked on whether the defendant had the requisite mental state to commit the offense of assault on a public servant, and the trial court orally instructed the jury that if a person “intentionally resists arrest” and causes bodily injury to a police officer, the person is guilty of the offense of assault on a public servant regardless of whether the defendant had the necessary intent to actually injure the police officer. Id. at 949–50. The court concluded that the defendant suffered egregious harm because “[t]o be guilty of assault [on a public servant], one must intend the result of the conduct, not just the conduct itself.” Id. at 950. Here, however, the jury did not have such an erroneous instruction before it. 

We note that the application paragraph of the jury charge limited the culpable mental states to the result of appellant’s conduct. Also, we conclude, after considering the state of the evidence, that there is no evidence showing that appellant was egregiously harmed. Moreover, at trial, although appellant cross-examined the complainant on whether or not a weapon had been used and whether the complainant had been in fear, the focus of appellant’s case, as summarized during closing argument, was to challenge the complainant’s identification of appellant. Appellant does not cite to any objectionable arguments made by the State regarding the necessary proof on appellant’s culpable mental state. Finally, appellant’s argument that any harm was compounded by the trial court’s failure to provide an instruction on the lesser-included offense of theft has been resolved by our holding that no such instruction was warranted by the evidence. 

Accordingly, we hold that appellant has not demonstrated that he was egregiously harmed by the complained-of jury instruction. 

We overrule appellant’s third point of error. 



Punishment Testimony 

In his fourth point of error, appellant argues that the trial court erred in allowing the State to offer testimony of his alleged gang involvement because that testimony was more prejudicial than probative. Appellant specifically complains of the testimony of Houston Police Officer M. Squyers regarding appellant’s gang affiliation, including Squyers’s testimony about appellant’s tattoos and “body art.” 

Prior to Officer Squyers’s testimony, appellant generally objected on the ground that Squyers’s testimony was “highly subjective” and that his testimony about appellant’s gang affiliation was not “definitive.” Appellant also objected to any testimony about appellant’s tattoos and “body art” because, among other things, it violated Texas Rules of Evidence 401 through 404. The trial court overruled appellant’s objection. 

Officer Squyers then testified, based in part on his review of pictures of appellant’s tattoos, that appellant was a member of the “Houstone” gang. Squyers explained that this gang is a criminal enterprise with a history of engaging in criminal acts, violence, and the sale of narcotics. Houston Police Officer T. Buchanan then testified, without any objection from appellant, that he had personally dealt with appellant because appellant had offered to serve as an inside informant on the “Houstone Tanglebast” gang in exchange for money. Buchanan explained that appellant’s tattoos identified him as a member of the Houstone gang. Buchanan noted that appellant was a documented member of this gang and appellant had indicated to Buchanan that he held “rank” in the gang. Buchanan explained that the Houstone gang was involved in narcotics trafficking, theft, kick burglaries, and other similar offenses. Buchanan eventually terminated the informant relationship with appellant after appellant admitted that he had been smoking cocaine. 

We review the trial court’s evidentiary ruling for an abuse of discretion. Winegarner v. State, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); Rivera v. State, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991). A trial court abuses its discretion when it acts outside the zone of reasonable disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g). 

Section 3(a) of Article 37.07 of the Texas Code of Criminal Procedure[2] “governs the admissibility of evidence during the punishment stage of a non-capital criminal trial.” Sierra v. State, 266 S.W.3d 72, 79 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing Erazo v. State, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004)).

 Article 37.07, section 3(a)(1) states that in the punishment phase, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. 

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon 2006). “Thus, a wide scope of evidence of any ‘bad acts’ is allowed at the punishment phase in a case such as appellant’s.” Sierra, 266 S.W.3d at 76. As this Court has previously noted, relevance in this context of the punishment phase “is more a matter of policy than an application of Rule of Evidence 401; it fundamentally consists of what would be 

TEX. CODE CRIM. PROC. ANN. art. 37.07 (Vernon 2006). 19 

helpful to the jury in determining the appropriate punishment.” Garcia v. State, 239 

S.W.3d 862, 865 (Tex. App.—Houston [1st Dist.] 2007, pet. ref’d) (citing Mendiola 

v. State, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000) and TEX. R. EVID. 401). As we 

have previously held,“[e]videnceofmembershipin a gang such as [Houstone] would 

come under the type of ‘bad acts’ relevant to sentencing, and [a]rticle 37.07 explicitly 

allows the introduction of such evidence.” [3] Sierra, 266 S.W.3d at 76. Thus, we 

conclude that evidence of appellant’s gang affiliation to the Houstone gang was 

relevant to appellant’s punishment and that the probative value of the evidence was 

not substantially outweighed by the danger of unfair prejudice. Accordingly, we hold 

that the trial court did not err in admitting this punishment-phase evidence.[4] 

3 

We have recently held that such evidence is admissible even if the requirements set forth by the Court of Criminal Appeals in Beasley v. State are not met. Sierra v. State, 266 S.W.3d 72, 78–79 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing Beasley 

v. State, 902 S.W.2d 452, 456–57 (Tex. Crim. App. 1995)). In Beasley, the Court, in considering the relevant case law and statues in effect at that time, held that it was not error for the trial court to have admitted testimony at the punishment phase regarding the defendant’s affiliation with a gang so long as the fact finder was (1) provided with evidence of the defendant’s gang membership, (2) provided with evidence of character and reputation of the gang, (3) not required to determine if the defendant committed the bad acts or misconduct, and (4) asked only to consider reputation or character of the defendant. Beasley, 902 S.W.2d at 457. 

4 

We also note that, in the trial court, appellant presented only general objections to Officer Squyers’s testimony regarding appellant’s gang affiliation on the grounds that the testimony was “highly subjective,” was not “definitive,” and violated Texas Rules of Evidence 401 through 404. However, even if appellant was able to show that Officer Squyers’s testimony regarding appellant’s gang affiliation, in a general sense, was inadmissible for some reason, by failing to object to Officer Buchanan’s 

We overrule appellant’s fourth point of error. 



Conclusion 

We affirm the judgment of the trial court. 

Terry Jennings Justice 

Panel consists of Justices Jennings, Hanks, and Bland. 

Do not publish. See TEX. R. APP. P. 47.2(b). 

testimony that appellant was a member of the Houstone gang and that this gang had the reputation for engaging in various criminal activities, any error in admitting such testimony would have been rendered harmless. TEX. R. APP. P. 44.2; see Anderson 

v. State, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (“Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact the inadmissible evidence sought to prove.”). 

21